27

Andrew Lyles #667516
Lakeland Correctional Facility
141 First Street
Coldwater, MI 49036

--------------------------------

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

--------------------------------

Andrew Lyles,

     Plaintiff in pro per

v.

Keith Papendick, MD

Sharon A. Oliver, MD

Joshua A. Buskirk, PA

Donna M. Rohrs, PA

Susan G. Smith, RN

Kathleen M. Leffingwell, RN

Curtina Jones, RN

Carla Gross, RN

Cynthia M. Pawlaczyk

Heidi Washington, MDOC Director

CORIZON MEDICAL SERVICES

_____Defendants_____/

Case:2:19-cv-10673
Judge: Michelson, Laurie J.
MJ: Davis, Stephanie Dawkins
Filed: 03-06-2019 At 02:59 PM
PRIS ANDREW LYLES V KEITH PAPENDICK
, ET AL (LG)

## VERIFIED CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. 1983

### JURY TRIAL DEMANDED

Lyles v. Papendick, Complaint, Page 1

**JURISDICTION**

1. This Court has jurisdiction under 28 U.S.C. 1331 & 1343(a)(3).

**VENUE**

2. The Eastern district is the appropriate venue under 28 U.S.C. 1391(b)(2) because all of the events took place at the Saginaw Regional Facility in Freeland, Michigan.

**PLAINTIFF**

3. Plaintiff Andrew Lyles is an MDOC prisoner currently housed at Lakeland Correctional Facility.

4. Plaintiff has no current or prior lawsuits.

**DEFENDANTS**

ALL DEFENDANTS ACTED UNDER COLOR OF LAW

DURING ALL TIMES DESCRIBED HEREIN

5. Keith Papendick, MD, was a regional supervising doctor employed by CORIZON. Papendick is being sued in his individual capacity.

6. Sharon A. Oliver, MD, was a doctor employed by CORIZON and worked at Saginaw Regional Facility (SRF) at all times described herein. Oliver is being sued in her individual capacity.

7. Joshua A. Buskirk was a Physician's Assistant (PA) employed by CORIZON at SRF at all times described herein. Buskirk is being sued in his individual capacity.

8. Donna M. Rohrs, PA, was a Physician's Assistant employed by CORIZON at SRF at all times described herein. Buskirk is being sued in his individual capacity.

Lyles v. Papendick, Complaint, Page 2

9. Kathleen M. Leffingwell, RN, was a registered nurse employed by MDOC at SRF during all times described herein and is sued in her individual capacity.

10. Susan G. Smith, RN, was a registered nurse employed by MDOC at SRF during all times described herein and is sued in her individual capacity.

11. Curtina Jones, RN, was a registered nurse employed by MDOC at SRF during all times described herein and is sued in her individual capacity.

12.  Carla Gross, RN, was a registered nurse employed by MDOC at SRF during all times described herein and is sued in her individual capacity.

13. Cynthia M. Pawlaczyk, RN, was a registered nurse employed by MDOC at SRF during all times described herein and is sued in her individual capacity.

14. Heidi Washington was the Director of the MDOC at all times described herein, and is presently the Director, in charge of reviewing, overseeing, and implementing all MDOC policies, procedures, and practices, and is sued inher individual and official capacities.

15. CORIZON MEDICAL SERVICES is and was the medical provider contracted by the MDOC to provide medical treatment for Plaintiff during all times described herein.  CORIZON is sued in their official and individual capacities.

## OVERVIEW

"You're lucky to be alive!" Defendant Oliver

This case is about bandaids on bullet wounds.  No matter

how many bandaids you apply, no matter how many "exams" or

antacids you shower on the victim, you've done nothing for him.

Like bullet wounds, ulcerative colitis maims and kills:

> MERCK MANUAL, PROFESSIONAL VERSION: Ulcerative colitis
> is a chronic inflammatory disease arising in the colonic
> mucosa, characterized most often by bloody diarrhea.
> Extraintestinal symptoms, particularly arthritis, may
> occur...[large mucosal ulcers with copious purulent exudate
> characterize severe disease].  Long term risk of colon
> cancer is elevated compared  with unaffected people.
> Diagnosis is by colonoscopy.  Treatment is with
> 5-aminosalicylic acid, corticosteroids, immunomodulators,
> biologics, antibiotics, and occasional surgery."

In October 2016, Plaintiff began having severe lower abdominal

pain and violent bouts of bloody diarrhea.  Over the course

of the next eleven months, (10/16-8/17), Plaintiff's disease

progressed under the indifferent eyes of Defendants to the point

where Plaintiff developed oozing, painful postules all over

his body, throat, and mouth.  Despite Plaintiff's dramatic weight

loss, chronic and progressively worse flareups of bloody

diarrhea, severe lower GI pain, urgency to defecate 10-20 times

per day and night, inability to defecate despite urgency,

fatigue, fevers, dizziness, and weeping corpuscles covering

his body and throat (a flashing neon indicator of severe

ulcerative colitis, the most dangerous and life-threatening

type of UC), Defendants did nothing more than give him antacids

for his non-existent indigestion and bacterial ointment for

his non-bacterial oozing sores.

In a conscious effort to disguise the seriousness of Plaintiff's illness, Defendants routinely and deliberately under-reported and mis-reported Plaintiff's symptoms. None of the Defendants ordered any form of treatment for:

(1) pain relief;
(2) diarrhea relief;
(3) iron supplements for chronic blood loss through stools; or
(4) (until June 21, 2016) essential diagnostics such as sigmoidoscopy or colonoscopy.

By the time Defendants belatedly performed a colonoscopy, and even more belatedly gave him mild, ineffective medications, Plaintiff's disease had progressed to the need for immediate and lengthy hospitalization, nearly losing his colon and his life. Not only had Plaintiff's UC developed into a _completely_ _preventable_ and near deadly state, but he had also developed the _completely_ _preventable_ severe acute anemia, with a high risk of heart failure, due to the daily blood loss for almost a year.

After seven weeks in the hospital, Plaintiff's 6'4" frame dropped to a skeletal 124 pounds (see Exhibit A), and he narrowly avoided a bowel reconstruction surgery. He was so sick that after being returned to the SRF facility, he had to be rushed back to the hospital for one more week of intensive monitoring and treatment of the severely advanced diseases. Plaintiff is now doomed to recurring flareups of this gut-wrenching disease, has a permanently increased risk of colon cancer, and must take high-powered and expensive medications for the rest of his life.

Lyles v. Papendick, Complaint, Page 5

For readability and clarity, the following is a segmented recitation of facts relevant to each Defendant's liability:

## FACTS

### DEFENDANT KEITH PAPENDICK

16. On 12/22/16, Plaintiff's treating doctor, Defendant Sharon Oliver submitted a "407 Request" to Defendant Papendick for a gastroenterology consult for Plaintiff, stating:

> "Inmate stated he had occasional rectal bleeding since October.  The bleeding became constant in November, 2017[sic], when he presented with to Health Care.  He was found to have FOBT positive on 11/8, 11/9,  11/17, 11/18, 11/22. He complained of epigastic pain, especially with  liquids, and hypogastic pain with foods.  On 12/20/16 he returned 3 FOBT positive cards."

17. FOBT  cards test for blood in the stool specimens. Positive means Plaintiff's stool contained blood, i.e., medical evidence that he was bleeding from his rectum on a near daily basis.

18. As regionally supervising doctor in charge of reviewing and approving requests for medical procedures and specialist consults, Defendant Papendick absolutely knew that chronic bloody diarrhea and severe lower abdominal pain were primary symptoms of ulcerative colitis, that sigmoidoscopy and colonoscopy were the two main diagnostic exams for this disease, and that continued blood loss would lead to anemia.

19. On 12/23/16, Defendant Papendick reviewed and denied this request, stating: "Medical necessity not demonstrated at this time. Treat constipation with sceduled senna 8.6 2 tabs bid, prove clearance with abd film and re-evaluate."

20. Senna is a laxitive that comes with warning against

prescribing when abdominal pain, nausea, vomiting, or sudden changes of bowel habits are present.

21. Despite Doctor Oliver's urging that Plaintiff needed to be seen by a specialist, and despite the report of primary UC symptoms or chronic bloody diarrhea and severe lower abdominal pain, which would indicate serious medical condition even to a layperson, Papendick did not order any relief for Plaintiff's excruciating pain; treatment for his chronic diarrhea; iron supplements for his evidenced and reported daily loss of blood; or diagnostic tests for Plaintiff's obviously serious medical condition.

22. Instead Papendick ordered a medication (senna) expressly contraindicated for Plaintiff's documented symptoms. Additionally, the warning labels of senna inform doctors that "rectal bleeding may indicate a serious underlying gastrointestinal condition and warrants...evaluation."

23. On 1/6/17, Defendant Oliver submitted a second "407 Request," identical to the 12/22/16 request, to Defendant Papendick for a gastroenterology consult for Plaintiff.

24. Despite two doctor requests in 15 days for Plaintiff to see a specialist, on 1/09/17, Papendick again denied the request, stating: "Medical necessity not demonstrated at this time. When symptoms demonstrate medical necessity, resubmit."

25. Again, despite Doctor Oliver's urging that Plaintiff needed to be seen by a specialist, and despite the report of rectal bleeding and severe abdominal pain spanning three months, Papendick did not order any relief described in paragraph 21.

## DEFENDANT SHARON OLIVER

### "I WOULD HAVE BET MY LIVELIHOOD THAT YOU'D COME BACK WITH A COLOSTOMY BAG AND WITHOUT A COLON"

26. Between November 2016 and August 2017, Defendant Oliver met with Plaintiff over twenty times.

27. During each of these times, Plaintiff reported to Oliver his symptoms of chronic bloody diarrhea and severe abdominal pain after eating.

28. Despite these recorded symptoms and numerous kites by Plaintiff, Oliver did not see Plaintiff for two months, at which time, on a March 30, 2016 exam with Oliver, Plaintiff reported additional symptoms of fatigue, dizziness, joint pains, shortness of breath, and dramatic weight loss.

29. By April 21, Plaintiff reported painful, bleeding boils in his mouth, throat, and all over his body, cuasing him constant pain and inability to eat.

30. Oliver repeatedly under- and mis-represented Plaintiff's symptoms, often recording his main symptoms as "pertinent negatives," meaning that he did NOT have the very symptoms he was being seen for. For example, after six months of treating Plaintiff and having recorded his diarrhea, rectal bleeding, and lower GI pain many times, on 3/10, 4/04, 5/04, and 5/18, Oliver reported negative for abdominal pain, constipation, and diarrhea.

31. During this time, Oliver prescribed antacids, although Plaintiff never reported stomach pain (upper GI), chest burning, or other symptoms of reflux or heartburn.

32. Oliver did not prescribe any medications for Plaintiff's

severe lower GI pain, anti-diarrheal medications, iron supplements for Plaintiff's near daily blood loss, or appropriate diagnostic tests such as sigmoidoscopy or colonoscopy.  Instead she ordered heartburn meds, and later, anti-bacterial lotion for his apthous ulcers.  Further, Oliver prescribed senna, which, as detailed in paragraph #22, is contraindicated for Plaintiff's condition.

33. Despite 11 months of Plaintiff reporting chronic bloody diarrhea to all these named Defendants, including over 20 times directly to Oliver, and despite Oliver noting on 6/30/17 that Plaintiff had developed anemia, Oliver never prescribed any iron supplements, ordered Plaintiff a high iron diet, or educated Plaintiff about his iron deficiency.

34. When in April 2017 Oliver finally requested and was granted a colonoscopy for Plaintiff, she allowed it to be scheduled 70 days later on June 21, despite Plaintiff's severe lower GI pain, bleeding, fatigue, dizziness, SOB, joint pains, and weeping ulcers covering his mouth, throat and body.

35. On 7/11/17, even after official diagnosis of UC, with the neon sign of its severity oozing from boils all over his body, severe weight loss, 10 months of flareups of pain--all indicating Plaintiff was suffering from SEVERE, life-threatening ulcerative colitis--Defendant Oliver prescribed the mildest, least effective medication, called "mesalamine," stating "prescription written for more than three months then will reevaluate."  She labeled the projected 10/10/17 appointment: "MP F/U. Routine."

36.  Three weeks later, on 8/2/17, Plaintiff was admitted to the hospital for seven weeks due to "severe acute anemia" and

severe ulcerative colitis, both life-threatening conditions.

37. When Plaintiff returned to SRF after his seven week hospitalization, Defendant Oliver told him, "Don't be depressed. You almost lost your life.  I'd have bet my livelihood that they were going to remove your colon and that you'd come back with a colostomy bag."  This from the very doctor that could have prevented the whole tragedy 10 months earlier with some simple diagnostics and basic medications.

## DEFENDANT JOSHUA BUSKIRK

38. On 8/2/17, 9:30am, Plaintiff's unit officers sent him to health services due to severe pain and near inability to walk or function.  At this point, Plaintiff had already been diagnosed with both UC and anemia and had lost 40 lbs.

39. Plaintiff was seen by PA Buskirk who recorded his symptoms as blood in stool, change in appetite, fever, diarrhea, fatigue, and weight loss.  Plaintiff begged to go to the hospital  or see a doctor, but Buskirk refused.

40. Plaintiff asked Buskirk to at least take a blood sample, and Buskirk consented, adding to the record that he'd f/u daily with nurses to monitor Plaintiff's condition.

41. At 12:30pm, three hours later, unit officers sent Plaintiff to health services emergency sick call in a wheel chair because he was in severe pain, weak, sweating, and unable to walk.

42. Buskirk gave Plaintiff an IV bag to rehydrate him and sent him back to the unit, instructing that "we will call him over tomorrow for follow up."

43. At 8:30pm, unit officers sent Plaintiff to health services for the third emergency visit of the day.  At this time Buskirk admitted to Plaintiff that the blood samples had come back earlier that afternoon, showing alarming blood cell counts, and that he would send him to the hospital.  Plaintiff was then transfported to the hospital for a seven week stay.

### DEFENDANT DONNA M. ROHRS, PA

44. On 6/22/17, PA Rohrs examined Plaintiff with the benefit on 9 months medical records support UC diagnosis, and was apprisd of all symptoms described in this complaint, inluding 30+ pounds weight loss and postules covering his body.

45. Defendant Rohr did not order any relief for his pain diarrhea, iron loss.

### DEFENDANT KATHLEEN M. LEFFINGWELL

"Be a big boy and stop complaining about your tummy ache."

46. On 1/23/17 and 3/03/17, Defendant Leffingwell, R.N., examined Plaintiff, during which time Plaintiff, who described his symptoms in full and whose medical file now showed 3 & 6 months, respectively of addominal pain, bloody diarrhea, and significant weight loss.

47.  On 3/30/17, Plaintiff's unit officers sent him to health services for emergency lower abdominal pain so excruciating that Plaintiff could barely stand up, and he was examined by RN Leffingwell.  Plaintiff reported to her his weight loss, severe abdominal pain, chronic bouts of violent diarrhea, bloody stools 10-20 times per day, dizziness, shortness of breath, and extreme fatigue.

48. Leffingwell under-reported Plaintiff's reported symptoms as "I have noticed a large amount of blood in the toilet for the past two days.  This has been going on for the past four months. Denies discomfort at this time."

49. Leffingwell informed Plaintiff that there was nothing she could do for Plaintiff's "tummy ache" and that "coming to health care every time you have a little tummy ache won't do you any good."

50. After Plaintiff's reporting of blood in the toilet, Leffingwell replied, "It always looks like more blood that it actually is, and that's normal.  Trust me, I'm a woman.  I know about blood in a toilet bowl."

51. Leffingwell failed to immediately (or ever) report the severe abdominal pain, fatigue, dizziness, shortness of breath, chronic diarrhea, or the intensity and number of bloody stools, and failed to order or request any relief for Plaintiff's excruciating pain, treatment for his chronic diarrhea, iron supplements, diagnostic tests, or to notify a doctor of Plaintiff's emergent condition.

52. On 5/18, Defendant Leffingwell refused to look at Plaintiff's open sores around his body, instead telling him to "relax, stop stressing, go outside, get some exercise, some sun, and to be a 'big boy' and stop complaining.".

53. Plaintiff reported this to the unit counselor, who, when he observed the ulcers all over Plaintiff's body, said "Oh hell no!" and immediately sent Plaintiff back to health care to be examined.

54. Leffingwell chastised Plaintiff for having his "mommy"

(the unit counselor) call health care, and then failed to report anything more than three ulcers on Plaintiff's leg, failed to order any relief, diagnostics, or to notify a doctor of Plaintiff's condition.

55. On 5/23/, 6/12, and 6/19/17 (two days after an emergency pain visit to health care), Leffingwell examined Plaintiff again, who reported accelerating symptoms, including extreme fatigue, dizziness, joint pains, and ulcers covering his body and throat. Plaintiff, at 6'4" had lost over 25 lbs and weighed 171 lbs.  Any lay person would have described Plaintiff's condition as "emergent" and requiring immediate hospitalization.

56. Leffingwell again failed to report these facts, efer to a doctor, ask for hosptialization, or order or request further treatment or diagnostics.

### DEFENDANT SUSAN G. SMITH

See no evil.  Hear no evil.  Speak no evil.

57. On 4/1/17, RN Smith examined Plaintiff, during which time Plaintiff described his symptoms in full, as described above. Plaintiff's medical file now showed 6 months of severe abdominal pain, bloody diarrhea, and significant weight loss.

58. Defendant Smith ordered 300Mg of TUMS for Plaintiff and did nothing else, not even report Plaintiff's complaints.

59.  On 5/22/17, RN Smith examined Plaintiff one day after emergency visitfor sever GI pain, for a follow up to "wounds" with "drainage" on Plaintiff's leg.  Plaintiff's weight has dropped to 173 and he described all the symptoms described above.

60. Defendant Smith did not report these symptoms to any

medical provider; did not request or order any other medications for his pain, diarrhea, blood loss, fatigue, or joint pain; did not order or request diagnostics for Plaintiff's emergent medical condition.

61. On 5/25/17 and 5/28/17, Plaintiff again presented and reported all aforementioned symptoms to Smith, who then failed to report symptoms, notify the medical provider, or order diagnostics or relief for Plaintiff.

62. On 7/07/17, Plaintiff again presented and reported all aforementioned symptoms, including weight loss of over 35 lbs (down to 161 lbs, for a 6'4" frame and near inability to function due to extreme fatigue and joint pains to Smith, who again failed to report symptoms, notify an MP, or order diagnostics or relief for Plaintiff.

## DEFENDANT CURTINA JONES

63. On 5/30, 5/31, and 7/22/17 (emergency pain on this date), RN Curtina Jones examined Plaintiff, during which time Plaintiff described his symptoms in full, as described above.  Plaintiff's medical file now showed 6 months of severe abdominal pain, bloody diarrhea, and significant weight loss.

64. RN Jones failed to report the syptoms, provide relief to Plaitiff, notify a medical provider, or order/request any diagnostics for Plaintiff's serious medical condition.

## DEFENDANT CARLA GROSS, RN

65. On 4/21, 5/20, and 5/29/17, RN Gross examined Plaintiff, during which time Plaintiff described his symptoms in full, as described above.  Plaintiff's medical file now showed 6 months

of severe abdominal pain, bloody diarrhea, and significant weight loss.

66. RN Gross failed to report the syptoms, provide relief to Plaitiff, notify a medical provider, or order/request any diagnostics for Plaintiff's serious medical condition.

### DEFENDANT CYNTHIA M. PAWLACZYK

67. On 4/6, 4/25, 5/21 (an emergency visit not recorded/reported until 6/7/17), and 6/7/17 (reported worsening symptoms), RN Pawlaczyk examined Plaintiff, during which time Plaintiff described his symptoms in full, as described above. Plaintiff's medical file now showed 6 months of severe abdominal pain, bloody diarrhea, and significant weight loss.

68. RN Pawlaczyk failed to report the syptoms, provide relief to Plaintiff, notify a medical provider, or order/request any diagnostics for Plaintiff's serious medical condition.

### DEFENDANTS HEIDI WASHINGTON AND CORIZON

Actions speak louder than words (and policies).

69. The facts in paragraphs 16-68 exhibit a pattern, a custom, a practice of both MDOC employees and CORIZON employees to:

1) underreport and misrepresent Plaintiff's symptoms;

2) fail to provide pain relief for Plaintiff's severe pain;

3) fail to provide anti-diarrheal medication;

4) fail to provide iron supplements; or

5) fail to order or request diagnostics for an obviously serious, chronic medical condition.

6) fail to request and approve specialist consults for serious conditions until they get intheir late and terminal stages.

Lyles v. Papendick, Complaint, Page 15

---------------------------------------------------------

## CLAIMS

---------------------------------------------------------

### DEFENDANT PAPENDICK

70. Defendant Papendick violated Plaintiff's 8th Amendment Rights by his deliberate indifference to Plaintiff's serious medical needs when, on 12/23/16 and 1/09/17, he (a) failed to refer Plaintiff to a gastroenterologist; (b) order relief for Plaintiff's pain and chronic diarrhea; order iron supplements for Plaintiff's chronic blood loss; (c) order any appropriate diagnostics such as colonsocopy or sigmoidoscopy; and (d) in fact ordered the senna medication which is contraindicated for Plaintiff's symptoms and condition, as described in paragraphs 16-25.

### DEFENDANT OLIVER

71.  Defendant Oliver violated Plaintiff's 8th Amendment Rights by her deliberate indifference to Plaintiff's serious medical needs when, during more than 20 exams of Plaintiff between November 2016 and July 2017, she failed to

    a) refer Plaintiff to a gastroenterologist after 1/06/17;
    b) order relief for Plaintiff's pain and chronic diarrhea;
    c) order iron supplements for Plaintiff's chronic blood loss;
    order a high iron diet; or educate Plaintiff regarding his
    iron loss;
    d) order any appropriate diagnostics such as colonsocopy or
    sigmoidoscopy (until June 21, 2016);
    e) failed to treat Plaintiff's condition as emergent even
    after a full UC diagnosis and full blown severe symptoms;
    f) and in fact ordered the senna medication which is
    contraindicated for Plaintiff's symptoms and condition,

as described in paragraph's 26-37.

Lyles v. Papendick, Complaint, Page 16

## DEFENDANT DONNA M. ROHRS, PA

72. On 6/22/17, Defendant Rohrs violated Plaintiff's 8th Amendment Rights by her deliberate indifference to Plaintiff's serious medical needs by failing to provide any of the treatments described in lines (a)-(e) in pargraph #71 above, and in her gatekeeper duty to either hospitalize Plaintiff or refer his severe condition to a doctor, as described in paragraphs 44-45.

## DEFENDANT JOSHUA A. BUSKIRK, PA

73. As described in paragraphs 38-43, on 8/02/17, Defendant Buskirk violated Plaintiff's 8th Amendmend Rights by his gatekeeper failure to send Plaintiff immediately to the hospital during Plaintiff's first two emergency visits (9:30am & 12:30pm) and when he received Plaintiff's lab report stating elevated white blood cells, combined with Plaintiff's severe symptoms, including fever, ulcers all over his body, 20-30 blood and puss defecations, extreme abdominal pain, joint pain, fatigue, extreme weakness, inability to stand up, dizziness, shortness of breath.

74. On 8/2/17, Defendant Buskirk violated Plaintiff's 8th Amendment Rights by his failure to treat Plaintiff with the treatments described in lines (a)-(e) in paragraph #71 above.

## DEFENDANT KATHLEEN M. LEFFINGWELL

75. As detailed in paragraphs 46-56, on 1/23, 3/03, 3/30, 5/18, 5/23, 6/12, and 6/19/17, Defendant Leffingwell violated Plaintiff's 8th Amendment rights with deliberate indifference by failing her nursing and gatekeeping duties failing to immediately report Plaintiff's severe condition to a doctor, by under- and mis-reporting Plaintiff's compaints, and failing to provide any

of the treatments described in lines (a)-(e) of paragraph #71.

### DEFENDANT CURTINA JONES, RN

76. As detailed in paragraphs 63-64, on 5/30, 5/31, and 7/22/17, Defendant Jones violated Plaintiff's 8th Amendment Rights with deliberate indifference by failing in her nursing and gatekeeper duties by not immediately referring Plaintiff's condition to a doctor or hospital, by not providing to Plaintiff the treatments and diagnostics described in lines (a)-(b) in paragraph #71, and by under- and mis-reporting Plaintiff's complaints.

### DEFENDANT CARLA GROSS, RN

77. As detailed in paragraphs 65-66, on 4/21, 5/20, and 5/29/17, Defendant Gross violated Plaintiff's 8th Amendment Rights with deliberate indifference by not immediately referring Plaintiff's condition to a doctor or hospital, under- and mis-reporting Plaintiff's complaints and failing in her gatekeeping and nursing duties by failing to provide any of the treatment or diagnostics described in lines (a)-(e) in paragraph #71.

### DEFENDANT CYNTHIA M. PAWLACZYK

78. As detailed in paagraphs 67-68, on 4/6, 4/25, 5/21, and 6/07/17, Defendant Pawlaczyk violated Plaintiff's 8th Amendment Rights with deliberate indifference by not immediately referring Plaintiff's condition to a doctor or hospital, under- and mis-reporting Plaintiff's complaints, and by failing her gatekeeping and nursing duties by failing to provide the treatments described in lines (a)-(e) in paragraph #71.

### DEFENDANT SUSAN G. SMITH

79. As detailed in paragraphs 57-62, on 4/1, 5/22, 5/25, 5/28,

and 7/02/17, Defendant Smith violated Plaintiff's 8th Amendment
Rights with deliberate indifference by not immediately referring
Plaintiff's condition to a doctor or hospital, under- and
mis-reporting Plaintiff's complaints, and by failing her gatekeeping
and nursing duties by failing to provide the treatments described
in lines (a)-(e) in paragraph #71.

## DEFENDANT HEIDI WASHINGTON

79. Defendant Heidi Washington, as director of the MDOC,
violated Plaintiff's 8th Amendment rights by implementing,
directing, and perpetuating the statewide customs and practices
of MDOC health care providers which caused serious harm, pain,
and risk to Plaintiff.  These customs include:

a) under- and mis-reporting Plaintiff's symptoms;

b) failing to provide pain relief for Plaintiff's severe
abdominal and joint pain;

c) failing to provide anti-diarrheal medication over the course
of 11 months;

d) failing to provide iron supplements, provide high iron
diet, or educate Plaintiff of his risks and dangers assocaited
with chronic blood & iron loss;

e) failing to order and request diagnostics for an obviously
serious, chronic medical condition;

f) failing to treat an obviously emergent condition as
emergent, by sending Plaintiff to a hospital or notifying
supervisong doctors; and

g) failing to refer and approve specialist consults.

These customs, spread consistently and deliberately among the 5

MDOC defendants in this case caused Plaintiff's initially mild
UC to spread and progress to a severe life-threatening disease,
with horrifying symptoms and a secondary life-threatening severe
acute anemia to accompany it.

Plaintiff has the facts referred to in this complaint and
a dozen properly written Declarations from other prisoner  patients
with serious and deadly diseases, spread out over many MDOC prisons
and practitioners, to support the non-isolative nature of this
claim.

## DEFENDANT CORIZON

80. Defendant CORIZON violated Plaintiff's 8th Amendment rights
by implementing, directing, and perpetuating the statewide customs
and practices of MDOC health care medical providers which caused
serious harm, pain, and risk to Plaintiff.  These customs include:

a) under- and mis-reporting Plaintiff's symptoms;

b) failing to provide pain relief for Plaintiff's severe
abdominal and joint pain;

c) failing to provide anti-diarrheal medication over the course
of 11 months;

d) failing to provide iron supplements, provide high iron
diet, or educate Plaintiff of his risks and dangers assocaited
with chronic blood & iron loss;

e) failing to order and request diagnostics for an obviously
serious, chronic medical condition; and

f) failing to treat an obviously emergent condition as
emergent, by sending Plaintiff to a hospital or notifying
supervisong doctors; and

Lyles v. Papendick, Complaint, Page 20

g) failing to refer and approve specialist consults.
These customs, spread consistently and deliberately among the 4
CORIZON defendants in this case caused Plaintiff's initially mild
UC to spread and progress to a severe life-threatening disease,
with horrifying symptoms and a secondary life-threatening severe
acute anemia to accompany it.

Plaintiff has the facts referred to in this complaint and
a dozen properly written Declarations from other prisoner/patients
with serious and deadly diseases, spread out over many MDOC prisons
and practitioners, to support the non-isolative nature of this
claim.

-----------------------------------------

### RELIEF REQUESTED

-----------------------------------------

WHEREFORE, Plaintiff prays this Court will:

A.  Grant Plaintiff compensatory damages in the amount of
$100,000 for each individual defendant and $250,000 each against
CORIZON and the MDOC's Heidi Washington.


B.  Grant Plaintiff punitive damages in the amount of $100,000
for each individual defendant and $250,000 each against CORIZON
and the MDOC's Heidi Washington.



C. Order Washington and CORIZON to treat Plaintiff with the
exams, referrals, diagnostics, diets, and medications commensurate
with his chronically painful and life-threatening condition.

D. Order Washington and CORIZON to revise their policies, practices and customs to eliminate:

    1) under- and mis-reporting of patient symptoms/complaints;

    2) non-requesting and non-approving of necessary diagnostics and specialist consults;

    3) non-treatment of chronically painful conditions (such as Plaintiff's  UC), chronic diarrhea, chronic blood loss.

I, Plaintiff, respectfully submit this complaint and thank this Court  for its consideration.  Further, I swear under penalty of perjury that based on personal knowledge the foregoing facts are absolutely true and correct, and that I am competent and willing to testify to each one.

Date:___3 - 1 - 2019___

Andrew Lyles

**EXHIBIT A**

PHOTOS OF ANDREW LYLES AT NORMAL WEIGHT
AND AFTER LOSING OVER 65LBS DUE TO UC.





PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY
★ MAIL ★

📅 DATE OF DELIVERY SPECIFIED*

📶 USPS TRACKING™ INCLUDED*

$ INSURANCE INCLUDED*

PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

PS00000000013

EP14 July 2013
OD: 11.625 x 15.125

# PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE.
VISIT US AT USPS.COM®

FROM:

Andrew Luks 661536
Lakeland Correctional Facility
141 First St
Coldwater, MI 49036

TO:

Clerk of the Court U.S.
District Court
Eastern District of Michigan
331 Lafayette Blvd
Detroit, MI 48226

RECEIVED

MAR - 6 2019

CLERK'S OFFICE
U.S. DISTRICT COURT

Label 228, March 2016

FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE.
USPS TRACKING #

9114 9014 9645 0300 9695 96

Label 400 Jan. 2013
7690-15-000-7848

$ 008.75

3/5/18 DP

UNITED STATES POSTAL SERVICE

PRIORITY MAIL
POSTAGE REQUIRED

DuPont™ Tyvek®
Protect What's Inside.™

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a
violation of federal law. This packaging is not for resale. EP14 © U.S. Postal Service; July 2013; All rights reserved.

Please
Recycle

UNITED STATES
POSTAL SERVICE.

# CIVIL COVER SHEET FOR PRISONER CASES

| | | |
|---|---|---|
| **Case No.** 19-10673 | **Judge:** Laurie J. Michelson | **Magistrate Judge:** Stephanie Dawkins Davis |

**Name of 1st Listed Plaintiff/Petitioner:**

ANDREW LYLES

**Name of 1st Listed Defendant/Respondent:**

KEITH PAPENDICK ET AL

**Inmate Number:** 667516

**Additional Information:**

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**

Lakeland Correctional Facility

141 First Street
Coldwater, MI 49036
BRANCH COUNTY

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   ☐ Yes       ☒ No
   ➢ If yes, give the following information:

   Court: _____

   Case No: _____

   Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   ☐ Yes       ☒ No
   ➢ If yes, give the following information:

   Court: _____

   Case No: _____

   Judge: _____

MIED (Rev. 07/06)  Civil Cover Sheet for Prisoner Cases