UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW LYLES,

      Plaintiff,

v.

KEITH PAPENDICK, M.D., *et al.*,

      Defendants.

_____/

Case No.: 19-10673

Laurie J. Michelson
United States District Judge

Michael J. Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON
DEFENDANTS SHARON OLIVER, KEITH PAPENDICK, DONNA
ROHRS, AND JOSHUA BUSKIRK'S MOTION FOR PARTIAL
SUMMARY JUDGMENT FOR FAILURE TO EXHAUST
<u>ADMINISTRATIVE REMEDIES (ECF No. 23)</u>**

## I.   PROCEDURAL HISTORY

Plaintiff Andrew Lyles filed this prisoner civil rights action on March 6, 2019.  He claims violation of the Eighth Amendment for lack of medical care for his ulcerative colitis.  (ECF No. 1).  On July 18, 2019, the District Judge entered an Order of Partial Dismissal, dismissing defendants Heidi Washington and Corizon Medical Services.  (ECF No. 6).  This case then participated in the Pro Se Early Prisoner Mediation Program, but no settlement was reached.  (ECF No. 12).  On December 26, 2019, all pretrial matters in this case were referred to the undersigned.  (ECF No. 22).  On December 31st, defendants Joshua Buskirk,

Sharon A. Oliver, Keith Papendick, and Donna Rohrs (hereafter referred to as "Defendants") filed a motion for partial summary judgment on the issue of exhaustion of administrative remedies.  (ECF No. 23).  Plaintiff responded to the motion.  (ECF No. 26).  The matter is now ready for report and recommendation.

For the reasons stated fully below, the undersigned **RECOMMENDS** that defendants' motion for partial summary judgment be **GRANTED IN PART, DENIED IN PART**.

## II.    FACTUAL BACKGROUND

Lyles alleges that he began having severe lower abdominal pain and bloody diarrhea in October 2016.  (ECF No. 1, PageID.4).  Over the next eleven months, he claims he had worsening symptoms including "oozing, pustules all over his body, throat, and mouth."  Despite his symptoms and requests for medical care, defendants "did nothing more than give him antacids . . . and bacterial ointment" for his sores.  (*Id.*).  According to Lyles, by the time defendants "belatedly" performed a colonoscopy, his disease had progressed to such an extent that he required immediate and lengthy hospitalization.  (*Id.* at PageID.5).  Lyles spent seven consecutive weeks in the hospital and returned for another week after being released from the hospital. Lyles alleges that the delayed and inadequate medical care defendants provided resulted in the unchecked, and debilitating progression of

2

the disease.  He also alleges that the delayed and inadequate medical care subject him to a lifetime increased risk of colon cancer. (*Id*.).

Plaintiff made the following allegations against the moving defendants. Lyles alleges that defendant Dr. Papendick, who he says was a regional supervising doctor, denied a request by defendant Dr. Oliver for a gastroenterology consult and prescribed ineffective and harmful medication.  (*Id.* at PageID.6, ¶ 18-19; PageID.7).  As for Dr. Oliver, he says that he reported his symptoms to her on numerous occasions, but Oliver did not see him for two months after he made these reports.  By then, he had additional symptoms.  (*Id.* at PageID.8, ¶ 28).  He also alleges that Oliver repeatedly misrepresented his symptoms in the medical log and prescribed ineffective medication.  (*Id.* at PageID.8-9).  According to Lyles, he begged defendant Physician's Assistant Buskirk to send him to the hospital or to see a doctor, but he refused.  Three hours later, at around 12:30 pm that day, unit officers sent Lyles back to health services on an emergency sick call because of his severe pain, weakness, and inability to walk.  Buskirk gave him an IV to rehydrate him and sent him back to his cell.  Buskirk told Lyles they would call him tomorrow for a follow-up.  At 8:30 pm that day, unit officers sent Lyles back to health care again.  This time, according to Lyles, Buskirk admitted that blood samples came back earlier that day showing "alarming" blood cell counts, and sent him to the hospital.  (*Id.* at PageID.10-11).  His allegation against defendant P.A.

Rohrs is that Rohrs examined him on June 22, 2017, after he had been diagnosed

with ulcerative colitis.  By the time of that examination, he says his medical

records amply documented his symptoms, including weight loss.  Still, Rohrs did

not order any relief for his pain, diarrhea, or iron loss.  (*Id.* at PageID.11, ¶ 44-45).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.    Standard of Review

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-moving

party to come forward with "specific facts showing that there is a genuine issue for

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S.

at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving

party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute

about a material fact, that is, if the evidence in the case "is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Such a determination requires that the Court "view the evidence presented through

the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254.

Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine

whether a jury could reasonably find that the plaintiff's factual contentions are true

by a preponderance of the evidence. *See id*. at 252-53. Finally, if the nonmoving

party fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, the movant is entitled to summary

judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due

regard not only for the rights of those "asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury," but also

for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no

factual basis." *Id*. at 327.

       B.     <u>Exhaustion of Administrative Remedies</u>

       1.     Legal Standards

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.  In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216.  "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218.  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001).  "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218.  Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of

specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies. "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, 2010 WL 1286256, *1 (W.D. Mich. 2010).

2.    MDOC Grievance Procedure

The defendants provide the administrative grievance process applicable to plaintiff's claims. Pursuant to MDOC policy directive 03.02.130 entitled

8

"Prisoner/Parolee Grievances," there are four stages to the grievance process that a prisoner must follow before seeking judicial intervention, each with specific time limits.  (ECF No. 23-2, PageID.114-20, Ex. B, MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007)).  First, the prisoner must attempt to verbally resolve the issue with the staff member(s) involved within two business days of becoming aware of a grievable issue.  (*Id*. ¶ P.)  If the issue is not resolved, the prisoner may then file a Step I grievance, which must be accomplished within five business days of the attempted verbal resolution.  (*Id*. ¶¶ P, V.)  If the prisoner is not satisfied with the Step I outcome, or he does not receive a timely response, he must file a Step II appeal within 10 business days of the response, or if, no response was received, within 10 business days of when the response was due.  (*Id*. ¶ BB.)  If the inmate is still not satisfied with the result, he must then file a Step III appeal within 10 business days of receiving the response, or if no response is provided, within 10 business days of when it was due.  The Step III response ends the administrative process.  (*Id*.  ¶ FF).

When filing a grievance and/or grievance appeal, an inmate must state the facts involved with the issue being grieved and must also include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  (*Id*. ¶ R).  A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another

grievance filed by the grievant.  (*Id*. ¶ G).  A grievance may also be rejected if the grievance is untimely but may not be rejected if there is a valid reason for the delay.  (*Id*. ¶ G.4).

Grievances and grievance appeals at all steps are considered filed on the date sent by the grievant.  The total grievance process from the point of filing a Step I grievance to providing a Step III response must generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II.  According to the policy, an extension for a Step I or II response may not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division.  The Grievance Coordinator is required to immediately notify the grievant in writing whenever an extension has been approved; the extension must also be noted in the grievance response.  (*Id*. ¶ S).

3.    Discussion

Lyles filed two grievances through the three-step procedure explained above: Grievance SRF-2017-05-0587-12D1 ("0587") and Grievance SRF-2018-10-0990-28E ("0990").

a.    Grievance 0587

Lyles filed this grievance on May 24, 2017.  The grievance reads, in its entirety:

> Dr. Oliver has clearly felt as though I should go to the hospital for a complete examination. She has repeatedly tried to help me by trying to have me approved to go to the hospital, but has been denied 2 or 3 times by her superiors. I have pain in my lower abdomen and blood in my stool, which indicates a very serious problem that needs to be taken care of immediately. My health is steadily decreasing. I am getting sores in my mouth, sores on my body that have become abessed [sic], and I am in real agony. MDOC Health Care refuses to provide me with the basic medical and humane treatment for whatever is wrong with me. I should not have to stay in pain like this. Something needs to be done to cure these problems.

(ECR No. 23-1, PageID.112).

According to defendants, this grievance alleges that Dr. Oliver failed to provide care and treatment to plaintiff. Defendants agree that this grievance is exhausted. (ECF No. 23, PageID.102).

In response, plaintiff is concerned that the implication of defendants' argument is that this grievance exhausts claims against only Dr. Oliver, and not also against defendants Papendick, Rohrs, and Buskirk. (ECF No. 26, PageID.136-37). Lyles insists that his naming "MDOC Health Care" was an unambiguous attempt to name all health care providers involved in his care. He says the grievance respondents understood this grievance to be against more individuals than Dr. Oliver. For example, at Step II he grieved that Health Services was liable to him for the failure to treat him, and at Step III, the respondent stated that Lyles alleged that "Health Care is not providing him with basic medical care." (*Id.* at

11

PageID.138).  In short, Lyles argues that the conversation between himself and the respondents throughout the three-step process indicates that the prison understood that the issue was health services, not one particular medical provider.  (*Id.*).  Lyles also points out that the prison did not raise an issue over whom the grievance was against, and so argues that defendants cannot now raise the issue.  (*Id.* at PageID.139).

In reply, defendants argue that plaintiff's failure to name Papendick, Buskirk, and Rorhs resulted in their having no notice of the claims against them. They insist that prison rules require the grievant to name all those involved, and the failure to do so results in an unexhausted grievance.  (ECF No. 27, PageID.152-53).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).  The MDOC grievance rules require a prisoner to include the "[d]ates, times, places, and names of all those involved in the issue being grieved" in his grievance. MDOC Policy Directive 03.02.130 ¶ R (July 2007).  Plaintiff did not name defendants Papendick, Rohrs, or Buskirk in his grievance.

However, failure to name an individual later sued is not necessarily fatal to a prisoner's suit so long as prison officials had fair notice of the claim raised against the defendants such that there is an opportunity to resolve it.  Indeed, while the grievance procedure *may* promote early notice to those who might later be sued, that has not been considered one of the leading purposes of the exhaustion requirement.  *Moffat v. MDOC*, 2010 WL 3906115, *7 (E.D. Mich. 2010) (citing *Jones*, 549 U.S. at 219); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation").

> But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Johnson*, 385 F.3d at 522.

Since the Supreme Court decided *Jones v. Bock,* the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules.  "We have also explained that the purpose of the PLRA's exhaustion requirement 'is to

allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.'" *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017), quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); s*ee also Hall v. Raja*, 2010 WL 3070145, at *5 (E.D. Mich. Apr. 26, 2010) (holding that prisoner had exhausted his administrative remedies despite the fact that he did not specifically name the medical staff whose decisions he grieved).

Plaintiff makes reference to *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), in his argument that the failure to name issue is waived because the prison addressed the grievance on the merits through the grievance process without raising a procedural defect.  (ECF No. 26, PageID.139).  In *Reed-Bey*, the Sixth Circuit explained, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* The prison did indeed address the merits of plaintiffs claim through all three steps of the process, and did not mention any procedural defect or an inability to identify the persons grieved.  As an initial matter, however, the undersigned does not agree with plaintiff that prison officials were aware that he was grieving every medical professional who provided care (or neglected to provide care).  Though the grievance respondents' reference "health care," the

14

responses are targeted at addressing treatment provided by Dr. Oliver or plaintiff's colonoscopy.  (*See* ECF No. 23-1, PageID.109, 111, 113).  While addressing the merits of plaintiff's claim, the prison did not address the overall healthcare he had received to date by every medical provider.

These unnamed persons are not left without the option of arguing failure to exhaust simply because the prison addressed the grievance on the merits.

> In *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), the initial grievance  did not name any defendant, and the MDOC opted to address the grievance on the merits, rather than denying the grievance for failing to name individuals. Unlike *Reed–Bey*, Plaintiff named a specific individual. Plaintiff's interpretation of the holding in *Reed-Bey* would require the MDOC to include, in response to any grievance, a list of all possible affirmative defenses that might be raised in a future lawsuit. That is not law.

*Kean v. Hughes*, 2013 WL 5771146, at *2 (W.D. Mich. Oct. 24, 2013); *see also* *Vandiver v. Vasbinder*, 2012 WL 4355536, at *2 (E.D. Mich. Sept. 24, 2012) ("Simply put, Plaintiff reads *Reed–Bey* too expansively. Under Vandiver's reading, whenever a prison official responds to a grievance on the merits, any prospective prison employee, regardless of lack of direct involvement loses the right to defend on exhaustion grounds.").

In light of the above case law, the undersigned will address the argument that plaintiff failed to name Dr. Papendick and P.A.s Buskirk and Rohrs, and thus failed to exhaust against them.  In this grievance, plaintiff makes two references to

persons beyond Dr. Oliver: Dr. Oliver's supervisors who denied her requests to send plaintiff to the hospital, and MDOC Health Care for failure to provide basic medical treatment. Plaintiff's reference to Dr. Oliver's supervisors gave prison officials fair notice of the claims against Dr. Papendick, who plaintiff alleges in his complaint was the "regional supervising doctor" (ECF No. 1, at ¶ 5) and who he alleges denied Dr. Oliver's requests to send him out (*Id.* at ¶¶ 16-19). The facts alleged in the grievance provide sufficient information for prison officials to identify which supervisor denied the request. Indeed, failure to name can be excused if it is obvious from the facts alleged in the grievance that the defendants were involved. *Calhoun v. Hill,* 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008); *Binion v. Glover*, 2008 WL 4097407, at *3-4 (E.D. Mich. Aug. 29, 2008).

The same is not true for defendants Rohrs and Buskirk. Plaintiff attempts to shoehorn these defendants into the grievance by pointing to his reference to "MDOC Health Care." But this reference is not the same as the reference to Dr. Oliver's supervisor who denied her requests. In the latter, prison officials had sufficient facts from which to easily identify the supervisor who denied Dr. Oliver's request with a simple inquiry. But the reference to MDOC Health Care not providing basic medical treatment for his conditions does not similarly give prison officials an opportunity to identify medical providers who are meant to be the subject of the grievance; nothing in the grievance points to defendants Rohrs

and Buskirk.  Accordingly, the undersigned concludes that grievance 0587 is

exhausted as to defendants Oliver and Papendick, but not against Rohrs and

Buskirk.  Rohrs and Buskirk should be dismissed.

> b.    Grievance 0990

Grievance 0990 was rejected at Step I as untimely under Policy Directive

03.02.130 ¶ P, which states that prisoners must attempt to resolve the issue within

two business days of becoming aware of the issue and to file the grievance within

five business after the attempt is made.  (ECF No. 23-1, PageID.108).  Lyles filed

this grievance on October 1, 2018.  He grieves Dr. Papendick's denials of off-site

care in early 2017.  On June 21, 2017, Lyles was finally taken off-site for a

colonoscopy, after which he was diagnosed with ulcerative colitis.  He continued

to experience symptoms, including bloody stool and ulcers in his throat.  He was

released from the hospital on September 26, 2017.  (*Id.*).  According to the prison

at Step I, plaintiff did not provide any mitigating circumstances to explain why he

did not submit this grievance within the required time limits, but instead waited

from September 2017 to October 2018.  The denial was upheld through Steps II

and III.  (*Id.* at PageID.106-07).

Lyles argues that his grievance was improperly rejected.  He explains that he

did not know that the named individuals were not taking proper steps to treat his

colitis until he finally received a copy of his medical records on September 27,

2018.  Before then, he trusted his care team when they said they would take care of him.  (ECF No. 26, PageID.141-42).  He tried to explain this in his grievance and Step II appeal.  At Step I, Lyles wrote that he sent a kite (letter) to health services in July 2018 requesting a copy of his medical records.  He filed a grievance for their failure to provide him a copy, and after he filed a Step III appeal, he was finally given a copy on September 27, 2018.  He filed grievance 0990 on October 1, 2018, three days later.  (ECF No. 23-1, PageID.108).  After it was rejected as untimely, plaintiff appealed to Step II.  He insisted that he filed his grievance within seven days of becoming aware of the issue—he was not aware of health care officials' "malfeasance" until September 27th, when he got his medical records.  He then promptly filed the grievance five days later.  (*Id.* at PageID.107).

Defendants acknowledge plaintiff's argument that he did not become aware of the issue until September 27, 2018, and filed the grievance three days later, but argue that his grievance is still procedurally defective.  Their reason is that plaintiff did not indicate that he attempted to resolve the issue with staff prior to filing his grievance, as he is required to do.  Thus, he failed to show how he properly exhausted his administrative remedies.  (ECF No. 27, PageID.153-54).

The undersigned agrees with defendants that this grievance was properly rejected as untimely.  Although plaintiff may not have been aware of the particulars of his medical care and the names of all those involved in his care until

he received his medical records in September 2018, he was certainly aware of the care he received or did not receive throughout 2017 and 2018.  He did not need his medical records to learn that he was not being sent off-site for specialized care or being promptly treated for pain and bloody stool.  He could have grieved about delays in medical care at that time.  Of course, he filed at least one grievance about his medical issue during that time—on May 24, 2017 he filed grievance 0587 discussed above.  And when he was hospitalized in 2017 and released in September 2017 with his diagnosis and care plan, he would most certainly have become aware of an issue regarding delays in specific and specialized treatment leading up to his extended hospital stay, but did not grieve the issue until a year later, in October 2018. This grievance was untimely.

On the issue of his failure to attempt to resolve before filing the grievance, plaintiff essentially says it would have been futile to attempt to resolve the issue with the "multitudinous staff members," and that the prison did not raise this issue during the grievance process, so defendants cannot raise it now.  (ECF No. 26, PageID.144).  Plaintiff cites *Reed–Bey v. Pramstaller,* 603 F.3d 322, 325 (6th Cir. 2010).  Again, in that case, the Sixth Circuit explained, "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.*  Here, the prison rejected plaintiff's grievance in part for failing to attempt to resolve the

issue; it did not address the merits of his claims.  (ECF No. 23-1, PageID.108).

Thus, the defendants have not waived the argument that the grievance was not

exhausted because of procedural defect.

Moreover, it appears the prison was correct—plaintiff did not attempt to

resolve the issue before filing the grievance.  While the undersigned appreciates

that it may have been futile or fruitless to attempt to resolve the issue with the

various alleged wrongdoers, prison grievance rules require the grievant to *attempt*

to resolve the issue.  Specifically, the rule states that a grievance may be rejected if

"[t]he grievant did not attempt to resolve the issue with the staff member involved

prior to filing the grievance unless prevented by circumstances beyond his/her

control or if the issue falls within the jurisdiction of the Internal Affairs Division in

Operations Support Administration."  PD 03.02.130(G)(2) (there are two

subsection 2s under ¶ G; this quotation is the second of these subsections).

Plaintiff did not suggest any circumstance beyond his control that prevented him

from attempting to resolve the issue.  He says there were a lot of health care staff

members involved in the grieved issue, and that he did not have access to them.

(ECF No. 26, PageID.144).   In some circumstances, the grievance process will be

considered unavailable where officers are unable or consistently unwilling to

provide relief; where the exhaustion procedures may provide relief, but no ordinary

prisoner can navigate it; or "where prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).  Here, even if an attempt to resolve would have been futile because the officials were unable or unwilling to resolve the issue, the grievance process was not "unavailable."  At the very least, it seems plaintiff could have sent a kite or letter to health care in an attempt to resolve his issue about inadequate medical care.  If the issue was not resolved, plaintiff then, and properly, could file the Step I grievance.

The rule does not require that the grievant successfully resolve the issue or only take steps that would likely lead to successful resolution.  Here, it is plain that plaintiff did not state any attempt to resolve the issue of inadequate health care for his ulcerative colitis before filing his grievance.  *See Jones v. Kakani*, 2012 WL 4450290, at *7 (E.D. Mich. June 8, 2012) (finding that plaintiff did not exhaust administrative remedies because he did not attempt to resolve the grievable issue within two days of learning of it); *Robertson v. Torres*, 2010 WL 3842376, at *5 (E.D. Mich. July 19, 2010) (finding that prisoner properly exhausted grievance even though he did not attempt to resolve the issue within two days because of circumstances beyond his control: the prisoner was not in the prison during the two

days following the incident).  The undersigned therefore concludes that grievance

0990 was not properly exhausted.[1]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendants Oliver, Papendick, Buskirk, and Rohrs' motion for partial summary

judgment (ECF No. 23) be **GRANTED IN PART, DENIED IN PART**, and that

claims against Buskirk and Rohrs be dismissed without prejudice for failure to

exhaust administrative remedies against them.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

---

[1] The conclusion above that grievance 0587 is exhausted as against Drs. Oliver and
Papendick saves at least part of the claim in grievance 0990.  The claim in grievance 0587 is
similar, if not identical, to the claim in 0990: requests for off-site care for his colitis were
improperly denied, delaying treatment for his serious condition.  Thus, the claim moves forward
as against those defendants.

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 8, 2020                     s/Michael J. Hluchaniuk
                                       Michael J. Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on May 8, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Andrew Lyles, #667516, Lakeland Correctional Facility, 141 First Street, Coldwater, MI  49036.

                                       s/ Durene Worth
                                       Case Manager
                                       (810) 341-7881
                                       durene_worth@mied.uscourts.gov