UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW LYLES, <br><br> Plaintiff, <br><br> v. <br><br> KEITH PAPENDICK, et al., <br><br> Defendants. | Case No. 19-10673 <br> Honorable Laurie J. Michelson <br> Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER OVERRULING DEFENDANTS' OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [71] AND ADOPTING THE REPORT AND RECOMMENDATION [70]**

In November 2016, Andrew Lyles saw Dr. Sharon Oliver at Saginaw Correctional Facility, where he is incarcerated, because he had blood in his stool. After ordering an X-ray, performing an anoscopy, and prescribing medication, Oliver submitted a request asking that Lyles receive a colonoscopy, which can only be done outside the prison. Dr. Keith Papendick is responsible for reviewing requests to see non-prison doctors. He denied the November request, apparently thinking that Lyles' bleeding was caused by constipation. He instructed Oliver to prescribe Lyles a laxative and order another X-ray showing that Lyles' constipation had cleared. Oliver did just that. After Lyles' condition did not improve, Oliver submitted two more requests in December 2016 and January 2017. Despite that the January request stated that Lyles' constipation had cleared, and other therapies were not working to stop his bleeding, Papendick denied both of these requests. After the January denial, Lyles' condition improved for some time, but started deteriorating once again. So in

April 2017, Oliver submitted another request, which Papendick approved. Lyles was ultimately diagnosed with ulcerative colitis.

In time, Lyles sued Oliver and Papendick, as well as several other medical professionals and entities, claiming they were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment. All pretrial matters were referred to Magistrate Judge Kimberly Altman. Oliver and Papendick are the only defendants currently remaining in the suit, and both filed for summary judgment. Magistrate Judge Altman recommends that the claim against Oliver be dismissed, but that the claim against Papendick survive.

Defendants object to this recommendation. The Magistrate Judge determined that a reasonable jury could find for Lyles on the subjective element of his deliberate indifference claim against Papendick. Papendick asserts that this determination is error. Lyles has not filed any objections to the Report, nor responded to Defendants' objection.

For the reasons explained below, the Court will overrule Defendants' objection and adopt the very thorough and well-reasoned Report and Recommendation.

## I. Legal Standard

The standard of review depends on whether the parties timely object to the Report and Recommendation. When a party timely objects, a district judge reviews the issue(s) raised by the objection de novo, but a district judge is not obligated to review un-objected to issues. See Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044,

2

at *8 (E.D. Mich. Apr. 16, 2012). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II. Objection to Subjective Element

Papendick's overarching objection is to the Magistrate Judge's finding that a reasonable jury could find that the subjective element of the deliberate indifference claim against Papendick is satisfied.

Before considering Papendick's objection, some law is helpful. A plaintiff who claims they received constitutionally inadequate medical care in prison "must show that the prison officials acted with deliberate indifference to a substantial risk of serious harm." *Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021). Deliberate indifference consists of both an objective and subjective component. *Id.* The subjective component requires that the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 674–75 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 675; *see also Murray v. Dep't of Corrections*, — F.4th —, No. 21-3398, 2022 WL 946294, at *4 (6th Cir. Mar. 30, 2022) (describing subjective component as whether there are "facts from which the inference of a substantial risk of serious harm" to plaintiff's health could be drawn and whether the doctor "knew of and disregarded that substantial risk."). In other words, a showing that the harm was

3

caused by an accident or mere negligence is not sufficient under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

The Court finds that, viewing the evidence de novo and in the light most favorable to Lyles, a reasonable jury could conclude that Papendick was aware of facts suggesting that a substantial risk of serious harm existed and that he knew of that risk, but disregarded it by denying a request for Lyles to consult with a gastroenterologist or receive a colonoscopy.

By January 2017, Papendick was made aware of several facts that would allow him to infer that Lyles suffered from a serious medical condition. The January request for a gastrointestinal consult stated that Lyles had rectal bleeding since October, and that by November, it was "constant." (ECF No. 66-1, PageID.516.) The request also states that in November, Lyles had five positive fecal occult blood test (FOBT) results, which meant blood not visible to the naked eye was present in his stool (ECF No. 66-2, PageID.572), and had an anoscopy, which checks for any masses or ulcers (ECF No. 66-2, PageID.573), but the source of his bleeding was not identified (*id.*; *see also* ECF No. 66-1, PageID.516). The request indicated that "no constipation was seen" on a December 8, 2016 X-ray of Lyles and that by the end of December, he had three more positive FOBT results "after clearing [the] constipation." (ECF No. 66-1, PageID.516.) It also told Papendick that Lyles had an increased number of stools with bright red blood and had lost seven pounds since the beginning of December. (*Id.*)

4

Papendick testified that bright red blood in stool could be caused by a number of conditions, including a fissure, hemorrhoids, constipation, a polyp, a gastric ulcer, ulcerative colitis, or Crohn's disease. (ECF No. 66-3, PageID.601.) But the January request indicated that several of these conditions had been ruled out because Lyles' anoscopy showed normal results and his constipation had cleared. And, as mentioned, Lyles continued to report bleeding and had lost weight. Papendick also does not object to the Magistrate Judge's finding that ulcerative colitis is a serious medical condition under the Eighth Amendment. (*See* ECF No. 70, PageID.1186.) So, from the facts of the January request, Papendick could infer that the risk of a serious condition, like ulcerative colitis, was substantial because some of the other, less serious potential causes had been ruled out already.

There is also evidence that Papendick knew of and disregarded the substantial risk of serious harm to Lyles' health. Papendick testified that to determine the source of rectal bleeding, he would need to "find out if the patient is constipated, then clear the constipation, then do, probably do a colonoscopy." (ECF No. 66-3, PageID.602.) This indicates that once Papendick was made aware that constipation was not the source of Lyles' bleeding, he inferred a colonoscopy would be necessary to diagnose Lyles. Yet, Papendick denied the January 2017 request for a GI consult, stating that medical necessity was not demonstrated at the time. (ECF No. 66-1, PageID.517.) And Papendick was aware via the request form that Lyles had been experiencing rectal bleeding for several months and that he had lost seven pounds, indicating

5

Lyles' condition was worsening.[1] (ECF No. 66-1, PageID.512; ECF No. 66-2, PageID.575, 577.) So there is evidence for a jury to find that Papendick did in fact infer that Lyles was suffering from a serious medical condition, but he ignored the need for a colonoscopy by denying the request, delaying appropriate treatment. *See Darrah v. Krisher*, 865 F.3d 361, 372–73 (6th Cir. 2017) (holding that because there was no medical reason for prescribing one medication over another and because defendants "knew that several alternatives had failed," a reasonable jury could find that the doctor disregarded a risk of serious harm by not prescribing the more effective treatment option).

A reasonable jury could also find that Papendick's inconsistent decisions further suggest indifference. A fourth request for a colonoscopy was made in April 2017, which Papendick approved. (ECF No. 66-1, PageID.532.) The April request, however, is not meaningfully different from the January request. The request states that Lyles had intermittent bright red bleeding from his rectum since October 2016, which "reappears cyclically." (ECF No. 66-1, PageID.532.) It states that Lyles had three more positive FOBT results from March 30 to April 1. (*Id.*) And it states that "constipation documented cleared on 12/8/16" and that the December 8, 2016 X-ray

---

[1] Papendick argues that because Lyles showed temporary improvement after he denied the January request, Lyles' deliberate indifference claim fails. (ECF No. 71, PageID.1223–1224.) Specifically, that Papendick could not have consciously exposed Lyles to harm if Papendick thought Lyles was improving without a colonoscopy. (*Id.*) But this temporary improvement *after* the January denial has no bearing on whether Papendick was deliberately indifferent *at the point* of the January denial. There is no evidence that Papendick thought Lyles was improving when he decided to deny the January request. In fact, the request form shows the exact opposite.

6

showed a "normal abdomen." (*Id.*) Under "failed therapies," it lists Tums, Protonix (a medication that decreases acid in the stomach and lower intestine), and Senna (a laxative). (*Id.*) Both the January and April requests contain the same pertinent facts—Lyles has had rectal bleeding since October, he has multiple FOBT positive results, and his constipation cleared in December 2016. But for reasons not apparent in the record, Papendick decided that a GI consult or colonoscopy were not necessary in January but were necessary in April. So based on Papendick's own actions in April, there is evidence that, in January, he made the inference that Lyles suffered from a serious medical condition. Yet, in January, Papendick denied the request for a GI consult.

Resisting this conclusion, Papendick makes several objections to the findings in the Magistrate Judge's report. Papendick argues that he was using his medical judgment when he denied the three requests for a GI consult or colonoscopy for Lyles. And, says Papendick, because he used his medical judgment in denying the requests, the Court should neither "second guess" this judgment nor "constitutionalize" claims that are more akin to state-law medical malpractice claims. (ECF No. 71, PageID.1208 (quoting *Westlake v. Lucas*, 537 F.2d 857, n.5 (6th Cir. 1976)).)

The Court agrees with Papendick that there is evidence he was using his medical judgment when he denied the requests from November and December 2016. Specifically, the November request stated that Lyles' X-ray results showed he was constipated. (ECF No. 66-1, PageID.497.) Papendick testified that he therefore denied the request because in his view, a colonoscopy cannot be adequately conducted if the

7

patient is constipated, and that constipation is often a cause of rectal bleeding in prisons. (ECF No. 66-3, PageID.602.) As for the December 2016 request, though the medical records indicate that Lyles was prescribed a laxative as instructed by Papendick and that his X-ray results showed no constipation (ECF No. 66-1, PageID.504–505; ECF No. 66-2, PageID.575), there is no evidence indicating that Papendick was made aware of these facts. The request itself does not indicate that the constipation was cleared or that Lyles' abdomen appeared normal. (*See* ECF No. 66-1, PageID.512.) So again using the same medical reasoning he used to deny the November request, Papendick denied the December request because constipation had not been ruled out as a cause based on the information he knew at the time. Thus, through December, perhaps the medical-judgment rule applies.

But Papendick's medical-judgment argument falls apart in the face of the January 2017 request. As described earlier, that request from another medical doctor clearly stated that Lyles returned three FOBT positive results "after clearing constipation" and that on the December 8, 2016 X-ray, "no constipation was seen." (ECF No. 66-1, PageID.516.) So Papendick's reason for denying the initial two requests—Lyles' constipation—was no longer relevant in January.

In attempting to explain why resolution of Lyles' constipation did not prompt him to approve the January request, Papendick testified that it was not sufficient for the request form to state that constipation was not seen on the X-ray, and that he needed to look at the radiology report himself. (ECF No. 66-3, PageID.602.) Yet Papendick did not testify that he doubted the November 2016 request form, which

8

stated that the X-ray showed constipation. And Papendick never explained why it was sufficient (in his view at least) to rely on the request form in determining that Lyles was constipated, but insufficient for the request form to state that Lyles' constipation had cleared.

But, even accepting Papendick's assertion that he had to check the radiology report himself, Papendick was unable to testify with certainty whether he ever actually requested or looked at the report. (*See* ECF No. 66-3, PageID.602 ("I may have had the X-ray"); *id.* at PageID.607 ("I did not have the X-ray report; I probably went and looked at it.").) Further, had Papendick looked at the December report, he would have seen that it states under the "impression" section that Lyles had a "normal abdomen." (ECF No. 66-1, PageID.509.) In comparison, the November report clearly states, "constipation is present." (*See* ECF No. 66-1, PageID.487, 509.) So a reasonable jury could conclude that Papendick did not use his medical judgment to deny the January request because Lyles was no longer constipated, and his constipation was the supposed reason for the first two denials. Indeed, based on both the request form (which Papendick definitely saw) and the radiology report (which Papendick said he might have seen), Lyles' constipation had cleared. Thus, there is evidence that Papendick strayed from his prior judgment to clear the constipation and then order a colonoscopy, and instead, rejected the January request because he disregarded the facts he was presented with.

Papendick presents two additional reasons for rejecting the January request. One is that the "lab information says [Lyles is] not anemic, which is unusual in

9

somebody who, quote, has blood in every stool." (ECF No. 66-3, PageID.603.) A couple of things could lead a jury to determine that this did not motivate Papendick's January denial, however. First, Lyles' hemoglobin count in both the January and April requests were normal. In January, Lyles' hemoglobin was at 15.4, and in April, it was at 15.2. (ECF No. 66-1, PageID.516, 531.) Both place Lyles within normal range. *See* Cleveland Clinic, *High Hemoglobin Count*, https://perma.cc/EU7H-FXG4, ("Normal hemoglobin counts are 14 to 17 for men"). So a reasonable jury could conclude that if lack of anemia was not a reason to deny the request in April, it may not have been the true motivation behind Papendick's denial in January. Second, Papendick did not mention anemia as a factor in his decision to deny the requests in November and December. The alternative therapy he recommends when denying those two requests focuses on clearing Lyles' constipation and then re-evaluating the request. (ECF No. 66-1, PageID.498, 513.) So a reasonable jury could also find that Papendick initially denied the requests because he thought constipation was the more likely issue, but once the constipation had resolved, he had no medical reason to deny the January request.

Papendick also suggests he denied the January request because FOBT results are subjective. (*See* ECF No. 66-3, PageID.603.) Specifically, Papendick testified that the FOBT can return positive results for several reasons: "One is blood; two is anything he ate that had blood in it; three is anything that causes his stool to be black; or a misread of the FOBT cards. The FOBT cards are read by nursing staff, typically. I don't know if these were read by a physician or not." (*Id.*)

10

But this argument is a red herring. Papendick did not testify that when he received the January request, he thought that Lyles' positive FOBT results were due to anything other than rectal bleeding. In fact, he testified that he did not assume the FOBT results were "misread" and that "I don't know that I doubted [that Lyles had bright red blood in his stool]." (ECF No. 66-3, PageID.603.) Since there is no evidence that either Papendick thought any of the non-bleeding reasons were causing Lyles' positive FOBT results when denying the request or that Papendick doubted that Lyles had rectal bleeding when denying the request, this testimony does little to move the ball forward. As is, it does not help a jury determine whether Papendick was made aware of facts that would allow him to infer a substantial risk of harm to Lyles's health, or if Papendick knew of and disregarded that substantial risk. So it does not change the Court's finding here.

As a final note, the Court recognizes that Papendick made several objections involving the Magistrate Judge's use of evidence from Dr. Albert Choi, Lyles' expert witness. These objections, however, also do not change the outcome of the Court's findings above. Even without relying upon Choi's testimony, there is sufficient evidence for a reasonable jury to conclude that Papendick acted with deliberate indifference in denying the January request that Lyles receive a GI consult. Because the objections regarding Choi do not alter the analysis for the subjective component, the Court will not address them on the merits.

### III. Other Claims

As to the other claims, none of Lyles, Papendick, or Oliver filed any objections, and the time to do so has passed. (*See* ECF No. 70, PageID.1202 (giving the parties 14 days from March 4, 2022 to object and noting that "[f]ailure to file specific objections constitutes a waiver of any further right of appeal.").)

The Court therefore finds that the parties have waived further review of the Magistrate Judge's findings on Lyles' other claims.

### IV. Conclusion

In sum, the Court OVERRULES Papendick's objection to the Magistrate Judge's Report and Recommendation (ECF No. 71) and ADOPTS the recommended disposition for all claims (ECF No. 70). So Defendants' motion for summary judgment (ECF No. 66) is granted in part. Oliver is DISMISSED as a defendant, but Lyles may proceed with his deliberate indifference claim against Papendick.

SO ORDERED.

Dated: March 31, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
