# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

Andrew Lyles,

    Plaintiff,

v.

Keith Papendick, M.D.,

    Defendant.

Case No.: 2:19-cv-10673
District Judge: Laurie J. Michelson
Magistrate Judge: Kimberly A. Altman

| | |
|---|---|
| Ian T. Cross (P83367) | CHAPMAN LAW GROUP |
| Laurence H. Margolis (P69635) | Ronald W. Chapman, Sr. (P37603) |
| Attorneys for Plaintiff | Devlin K. Scarber (P64352) |
| 402 W. Liberty St. | Jeffrey Bomber, Jr. (P85407) |
| Ann Arbor, MI 48103 | Attorneys for Keith Papendick, M.D. |
| (734) 994-9590 | 1441 West Long Lake Rd., Suite 310 |
| ian@lawinannarbor.com | Troy, MI 48098 |
| larry@lawinannarbor.com | (248) 644-6326 |
| | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |
| | jbomber@chapmanlawgroup.com |

**PLAINTIFF'S RESPONSE TO DEFENDANT PAPENDICK'S "SUGGESTION OF BANKRUPTCY AND NOTICE OF AUTOMATIC STAY" REGARDING THE BANKRUPTCY OF TEHUM CARE SERVICES, INC. (ECF No. 87)**

## TABLE OF CONTENTS

| SECTION | PAGE NO. |
|---|---|
| Table of Contents………………...…………………….....………… | ii. |
| Index of Exhibits ……………………………………...………………… | iii. |
| Controlling or Most Appropriate Authorities…………………………… | iv |
| Preliminary Statement...……………………….……...…..…….………….. | 1 |

### ARGUMENT

| | |
|---|---|
| I) § 362(a) protects the debtor, not third-parties……………...…...……. | 6 |
| II) Extending the automatic stay to enjoin prosecution of claims against non-debtor third parties due to 'unusual circumstances' is a function of the bankruptcy court………….………… | 9 |
| IV) Plaintiff's suit against Defendant Papendick is not an "act to obtain possession of property of the Estate" for purposes of § 362(a)(3)..………………….....…………….…………… | 12 |
| IV) Conclusion…………...……………....……………….…………. | 14 |

# **INDEX OF EXHIBITS**

**Exhibit A**: *University of Missouri's Reply Brief in Support of their Motion for a Preliminary Injunction,* Case No. 22BA-CV01701-01, Circuit Court of Boone County, Missouri, filed 01/30/2023

**Exhibit B:** *CHS TX, Inc. and Yescare Corp.'s Opposition to Plaintiff's Motion for Preliminary Injunction,* Case No. 22BA-CV01701-01, Circuit Court of Boone County, Missouri, filed 01/23/2023

**Exhibit C:** *Amended Voluntary Bankruptcy Petition of Tehum Care Services, Inc.,* Case 23-90086, Filed in TXSB on 02/15/23

**Exhibit D:** *Corizon 2018-2019 Master Policy -Medical Group Professional Liability*

**Exhibit E:** *Tehum Care Services, Inc.'s Suggestions in Support of its Opposition to Plaintiff's Motion for Preliminary Injunction,* Case No. 22BA-CV01701-01, Circuit Court of Boone County, Missouri, filed 01/23/2023

# **STATEMENT OF QUESTIONS PRESENTED**

1. Does the § 362(a) automatic bankruptcy stay apply to parties other than the debtor?

    Plaintiff Answers: NO

    Defendant Answers: YES

2. Do courts other than the bankruptcy court have the power to issue § 105(a) injunctions extending the automatic stay to non-debtor related parties?

    Plaintiff Answers: NO

    Defendant Answers: YES

3. Is continued prosecution of Plaintiff's action against Defendant Papendick enjoined by operation of § 362(a)(3) of the Bankruptcy Code?

    Plaintiff Answers: NO

    Defendant Answers: YES

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

1. *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194 (6th Cir. 1983)

2. *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292 (5th Cir. 2007)

3. *Patton v. Bearden,* 8 F.3d 343 (6th Cir. 1993)

4. *In re St. Vincents Catholic Med. Ctrs.,* 398 B.R. 517 (Bankr. S.D.N.Y. 2008)

PRELIMINARY STATEMENT

There is one Defendant in this case: Dr. Keith Papendick. Dr. Papendick is a former employee of non-party Quality Correctional Care of Michigan, P.C. (*See* ECF No. 67-3, PageID.777). To date, neither Defendant Papendick nor Quality Correctional Care of Michigan, P.C. (hereafter "Quality") have filed for bankruptcy. Quality remains an active entity, providing medical services under contract with CHS TX, Inc., a corporate successor of Corizon Health, at two county jails in Michigan (St. Clair and Calhoun). On February 22, 2023, Defendant Papendick filed a Suggestion of Bankruptcy in this matter. (ECF No. 87). The debtor in the referenced bankruptcy proceeding is not Defendant Papendick, but rather a non-party, Tehum Care Services, Inc.

Corizon Health, Inc. was the health care contractor for the Michigan Department of Corrections at the time of the events at issue in this case. Corizon hired Quality, and Quality hired Papendick, to perform services related to the Corizon-MDOC contract. Corizon's contract with the MDOC ended on September 28, 2021 and was not renewed. (2:19-cv-13382 ECF No. 66-2, PageID.1924). The relationship between Papendick, Quality, Corizon, Tehum, and CHS TX stems from a divisional merger transaction that Corizon entered into with itself in May of 2022. A recent order entered in another case in this District in which Dr. Papendick

1

is a defendant, *Jackson v. Corizon Health, Inc.*, 2:19-cv-13382, summarizes the practical effect of this recent transaction:

> The divisional merger allocated the bulk of Corizon's assets to CHS TX. Specifically, CHS TX inherited all of Corizon's employees, all of Corizon's active contracts, and nearly all of Corizon's cash, equipment, real estate, and other assets. (Id. at PageID.3417-28). Both pre-division Corizon and CHS TX were owned by the same, sole-shareholder, and CHS TX also inherited Corizon's CEO and Chair, Sara Tirschwell. (Compare id. at PageID.3410, with ECF No 83-1, PageID.3371, and ECF No. 83-2, PageID.3391).
>
> Corizon retained all of its expired contracts and their corresponding liabilities. Corizon also held onto one million dollars in cash, the right to collect on its insurance policies, and the right to collect up to four million dollars under a "funding agreement" with an affiliate of Corizon Health, provided that Corizon met "certain conditions." (ECF No. 83-4, PageID.3429-30). All other assets and liabilities passed to CHS TX. (Id. at PageID.3417-18).
>
> After the divisional merger, YesCare, Inc., a corporation owned by CHS TX's CEO, acquired CHS TX, and CHS TX began informally doing business under its parent company's name. (ECF No. 83, PageID.3343; ECF No. 83-7; see, e.g., ECF No. 77-27 (explaining that CHS TX does business under the name "YesCare")). Corizon later changed its name to Tehum Care Services, Incorporated. (ECF No. 83-4, PageID.3587).

*Jackson v. Corizon Health, Inc.,* 2022 U.S. Dist. LEXIS 198717 at *3-*4. (E.D. Mich. 2022).

2

Corizon's Plan of Merger refers to CHS TX as the "NewCo," and the entity that became Tehum Care Services as the "RemainCo." (2:19-cv-13382 ECF No. 83-4, PageID.3408). Although the RemainCo has now filed for Chapter 11 protection, the NewCo and its recently-incorporated parent, Yescare Corp., continue to operate the former Corizon assets outside of bankruptcy. After leaving behind most of Corizon's liabilities in the RemainCo, the NewCo is apparently solvent. Recent filings in a Missouri adversary proceeding reveal that the NewCo has over $173 million in assets, (**Ex. A**, pg. 29), and that those assets were encumbered by less than $98 million in long-term secured debt. (**Ex. B**, pg. 7).

The divisional merger transaction rendered the RemainCo deeply-insolvent. Its liabilities to trade creditors, largely consisting of unpaid bills to hospital systems for treatment of prisoners, exceed $31 million. (**Ex. C**). The RemainCo was also saddled with over three dozen employment-law claims, (2:19-cv-13382 ECF No. 83-4, PageID.3552), and nearly five hundred personal-injury claims, (2:19-cv-13382 ECF No. 83-4, PageID.3535-3551), including Corizon's purported indemnity obligation to Dr. Papendick in this case. (2:19-cv-13382 ECF No. 83-4, PageID.3542).

The RemainCo has no employees, no active business, and few assets. Its liability insurance rights are likely to be illusory, at least with respect to the

3

hundreds of personal-injury tort claims assigned to it. That is because the RemainCo has not been allocated enough cash to meet the approximately $20-million-per-policy-year (**Ex. D**, pg. 1) self-insured retentions under its applicable insurance policies. The RemainCo's insurer will not make any payment unless the RemainCo pays the self-insured retention, regardless of its insolvency. The RemainCo's insurance contract is quite explicit on this point:

> Under no circumstances will we make any payment under this policy unless and until the First Named Insured has exhausted the Aggregate Self-Insured Retention by the payment of damages arising from covered medical incidents. **If the First Named Insured is unable to pay any part of the Self-Insured Retention due to bankruptcy, insolvency, or other financial difficulty, then this policy will not be required to "drop down" to make payments of policy limits and/or defense costs**, and no payment of any kind will be available to the First Named Insured or any Insured under this policy.

(**Ex. D** pg. 20) (emphasis added).

The Plaintiff and Defendants in *Jackson v. Corizon Health, Inc.*, 2:19-cv-13382, are represented by the same counsel that represent the parties in the present matter. In the summer of 2022, Plaintiff's counsel became aware that substantially all of the Corizon Health assets had been transferred to CHS TX, and that Tehum Care Services would be incapable of fulfilling its purported indemnity obligations to Defendant Papendick in this case and others. Plaintiff's counsel then filed a motion in the *Jackson* case under Rule 25(c), "for an Order Substituting Yescare

4

Corp. And CHS TX, Inc. as Party Defendants in Place of Corizon Health, Inc., and Requiring Yescare Corp. and CHS TX, Inc. to Assume Corizon Health, Inc.'s Duty to Indemnify Defendant Papendick"[1] (2:19-cv-13382 ECF No. 77). Inexplicably, **Dr. Papendick opposed the plaintiff's motion to require the solvent successor entity to indemnify him.** (2:19-cv-13382 ECF No. 82, PageID.3316).

Since Tehum Care Services will default on any indemnity obligation it owes Dr. Papendick, Dr. Papendick is now functionally uninsured. But Tehum's inability to indemnify Dr. Papendick does not allow Dr. Papendick to receive a discharge of his employment-related liability through the Tehum bankruptcy. In fact, such an outcome is impossible: Tehum filed its voluntary Chapter 11 petition in the Fifth Circuit, where non-debtor third-party releases are categorically prohibited. *See Nexpoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 435-437 (5th Cir. 2022). Dr. Papendick similarly cannot benefit from the automatic stay under § 362(a) merely because his purported indemnitor has filed for bankruptcy. The Fifth Circuit has held that even where "a successful claim by [Plaintiff] against [a non-debtor defendant] would probably result in a lawsuit by [the non-debtor defendant] against the debtors seeking

---

1 A similar motion was not filed in this case because the *Monell* claim against Corizon Health had been dismissed (ECF No. 6) and Dr. Papendick is the sole Defendant. Thus, in this matter, there was no corporate party to substitute under Rule 25(c).

indemnification . . . **the merits of that probable litigation are not [the plaintiff's] problem . . . its claim is not directed against the debtors' property and is not subject to a stay under § 362(a).**" *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 302 (5th Cir. 2007) (emphasis added).

In short, Dr. Papendick is not the debtor in the Tehum bankruptcy. He is, at best, an unsecured creditor of Tehum, holding a contingent, unliquidated claim against the debtor for indemnification. He could have cooperated with Plaintiff's counsel's efforts to compel Corizon's solvent successors to indemnify him, but he did not. Unless he files for bankruptcy himself, he has no right to benefit from any of the debtor protections afforded under the Bankruptcy Code by virtue of Tehum Care Services' Chapter 11 filing.

## ARGUMENT

### I. § 362(a) Protects the Debtor, Not Third Parties

It is the overwhelming consensus among the circuits, including both the Sixth Circuit and the Fifth Circuit, where Tehum Care Services' bankruptcy is pending, that § 362(a) protects only "the debtor," not the debtor's third-party co-defendants. *See, e.g. Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir.

1983); *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) (holding that § 362(a) "facially stays proceedings 'against the debtor' and fails to intimate, even tangentially, that the stay could be interpreted as including any defendant other than the debtor . . . It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor"); *Williford v. Armstrong World Industries,* 715 F.2d 124, 126 (4th Cir. 1983); *Teachers Ins. & Annuity Asso v. Butler,* 803 F.2d 61, 65 (2nd Cir. 1986); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 4 (1st Cir. 1983) ("had Congress intended § 362(a) to apply to solvent co-defendants, it would have said so"); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir. 1984) ("[i]t would make no sense to extend the automatic stay protections to solvent co-defendants. . . . Accordingly, we join the other circuit courts in concluding that 11 U.S.C. § 362 stays litigation only against the debtor, and affords no protection to solvent co-defendants.").

It is true that "some courts have held that the debtor's stay may be extended to non-bankrupt parties in 'unusual circumstances.'" *Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir. 1993). But the mere fact that a non-debtor defendant may be entitled to indemnity from a bankrupt debtor does not constitute an "unusual circumstance"

7

warranting extension of the automatic stay to the indemnitee. *See Johnson v. Fifth Third Bank, Inc.,* 476 B.R. 493, 502 (W.D. Ky. 2012) (collecting cases). Given the widespread prevalence of indemnification agreements, if the existence of an indemnification agreement alone constituted an "unusual circumstance" justifying the extension of the automatic stay to a non-debtor defendant, "then the exception would effectively become the rule." *Al-Shara v. Wal-Mart Stores, Inc.,* 2012 U.S. Dist. LEXIS 47228 at *12 (E.D. Mich. 2012) (quoting *Smith v. Blitz U.S.A., Inc.,* 2012 U.S. Dist. LEXIS 47817 at *14 (D. Minn. 2012)). And "where the non-debtor defendant's liability rests upon its own breach of duty, 'unusual circumstances' are not present." *Johnson v. Fifth Third Bank, Inc.,* 476 B.R. 493, 502 (W.D. Ky. 2012); *See also, Al-Shara v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 47228 at *12 (E.D. Mich. 2012).

The fact that medical-malpractice (or deliberate-indifference) claims may be brought against individual doctors and nurses who are former employees or contractors of a bankrupt entity, and that those medical professionals may have indemnity claims against the debtor, is far from an "unusual circumstance." It is a situation that occurs in virtually every hospital-system bankruptcy. This common fact pattern does not warrant extension of the automatic stay to claims brought

8

against individual medical-professional employees of the debtor for their own wrongful acts. As one bankruptcy court faced with a similar situation put it:

> Covered Persons, be they physicians, nurses or other employees of the Debtors, are not themselves the Debtors -- they are third parties. Claims against Covered Persons for medical malpractice or otherwise, arising before or after the Debtors' Commencement Date, were not affected by the automatic stay under Bankruptcy Code Section 362(a) in the Debtors' Bankruptcy Cases. . . .
>
> Nothing in the Bankruptcy Code authorizes or permits a release or discharge of claims asserted against non-debtor third parties (see Section 524(e)), or an injunction barring claims against third parties seeking to impose liability for the third parties' own derelictions.

*In re St. Vincents Catholic Med. Ctrs.,* 398 B.R. 517, 520 (Bankr. S.D.N.Y. 2008).

## II. Extending the Automatic Stay to Enjoin Prosecution of Claims Against Non-Debtor Third Parties Due to 'Unusual Circumstances' is a Function of the Bankruptcy Court, not of the Courts Where Actions Against Non-Debtor Third Parties are Pending

In the rare cases where 'unusual circumstances' warrant extension of the automatic stay to non-debtor third parties, "it should be noted that such extensions, although referred to as extensions of the automatic stay, **were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.**" *Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir. 1993). (emphasis added).

9

Determining whether "unusual circumstances" exist to warrant extension of the stay to non-debtor third-parties is thus a function of the bankruptcy court, not of the courts where actions against non-debtor third parties are pending. *See Wells Fargo Nat'l Tax Free Fund v. Helicon Assocs.,* 2010 U.S. Dist. LEXIS 153660 at \*64 (E.D. Mich. 2010) ("The Court agrees that it does not have the power to extend the automatic stay to the non-bankrupt codefendants, and that such power resides with the bankruptcy court"). This is because "according to the Sixth Circuit, the presence of unusual circumstances allows an extension of the stay only through an injunction issued under § 105(a)." *In re Johnson,* 548 B.R. 770, 788 (Bankr. S.D. Ohio 2016).

It is not even clear that Dr. Papendick has standing to request relief under § 105(a) of the Bankruptcy Code. Generally, only the debtor may seek an injunction extending the automatic stay to non-debtors. *See In re Tamarack Dev. Assocs., LLC,* 611 B.R. 286, 299 (W.D. Mich. 2020); *Smith v. Blitz U.S.A., Inc.,* 2012 U.S. Dist. LEXIS 47817 at \*11-\*12 (D. Minn. 2012). But even assuming that a non-debtor third party such as Dr. Papendick has standing to seek it, relief under § 105(a) of the Bankruptcy Code cannot be obtained merely by filing a suggestion of bankruptcy in a pending case. Instead, a request for a § 105(a) injunction "must be brought by adversary proceeding" in bankruptcy court. *In re Cincom iOutsource,*

10

*Inc.,* 398 B.R. 223, 227 (Bankr. S.D. Ohio 2008); *See also, Smith,* 2012 U.S. Dist. LEXIS 47817 at *11-*13 (D. Minn. 2012). When litigating whether an extension of the automatic stay to a non-debtor third-party is warranted, "[t]he burden of showing "unusual circumstances" to invoke an automatic stay falls on the party seeking the stay." *Zwick Partners, LP v. Quorum Health Corp.,* 456 F. Supp. 3d 949, 951 (M.D. Tenn. 2020).

Even if Dr. Papendick had standing to seek this relief (he does not), and even if a court that is not presiding over the bankruptcy case had the power to grant it, Dr. Papendick has not borne his burden of demonstrating "unusual circumstances" warranting a § 105(a) injunction extending the automatic stay to him. He has not even filed a motion, let alone an adversary proceeding. He has put forth neither evidence nor argument explaining his position. It is insufficient "for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Buetenmiller v. Macomb Cnty. Jail,* 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997)). Issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are considered forfeited. *Id.*

## III. Plaintiff's Suit Against Defendant Papendick is Not an "Act to Obtain Possession of Property of the Estate" for Purposes of § 362(a)(3)

Dr. Papendick may argue that Plaintiffs' cause of action against him falls within the ambit of § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Although he has not developed this argument, Dr. Papendick's filing could be construed as a claim that 1) he has an enforceable right to indemnification from the debtor for any liability incurred in this case, and 2) therefore, by proceeding against Papendick, Plaintiff is really trying to obtain property from the estate of Tehum Care Services.

Both premises of this underdeveloped argument are flawed. First, it is not clear that Dr. Papendick even holds a valid unsecured claim for indemnification against the debtor. Dr. Papendick has not put forth evidence that he has any contractual right to be indemnified; it may be that Corizon Health merely *chose,* as a matter of corporate policy, to defend and indemnify former Quality employees named in prisoner civil rights suits despite having no legal duty to do so. Second, even if Dr. Papendick has a contractual indemnification right, his status as an unsecured creditor of Tehum does not transform a claim against him into an action to obtain property of the bankruptcy estate. *See In re Kay Bee Kay Props., LLC,*

12

618 B.R. 486, 492-93 (Bankr. E.D. Mich. 2020); *Straney v. GMC,* 2006 U.S. Dist. LEXIS 76940 at *12 (E.D. Mich. 2006); *In re St. Vincents Catholic Med. Ctrs.,* 398 B.R. 517, 523 (Bankr. S.D.N.Y. 2008) ("[t]he fact that the Covered Person may have a right of indemnification against the Debtors . . . does not convert the injured person's medical malpractice claim against the Covered Person into a claim against the Debtors or the MedMal Trusts for Bar Date purposes or any other purpose"). Under the law of the Fifth Circuit, where the relevant bankruptcy is pending, whatever rights to indemnification that Papendick may have "are not [Lyles] problem . . . [Lyles'] claim is not directed against the debtors' property and is not subject to a stay under § 362(a)." *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case),* 483 F.3d 292, 302 (5th Cir. 2007).

Finally, as a practical matter, Lyles' claim against Papendick is not an attempt to obtain assets from the Tehum bankruptcy estate. The unsecured indemnification claims against Tehum held by Dr. Papendick and other former Quality employees will be severely impaired. Tehum estimated the tort liabilities for the nearly five hundred personal-injury claims it was assigned in the divisional merger at over $88 million, (**Ex. E**, pg. 2),  a figure which dwarfs both its available assets and the $4-million policy limits of its professional-liability insurance policies. (**Ex. D**, pg. 1). As discussed *supra,* Tehum's woefully-inadequate

13

insurance coverage will not even be accessible to Tehum's creditors, because Tehum lacks the funds to satisfy the $20-million self-insured retention. To make matters worse, the indemnification claims of former Quality employees like Dr. Papendick are not entitled to priority over the approximately $31 million in breach-of-contract claims held by Tehum's trade creditors. As Tehum's largest unsecured creditor, the University of Missouri, put it, Dr. Papendick "must stand among the creditors of not only Corizon, LLC, but of Corizon Health's other subsidiaries (who combined liabilities to form "Corizon Health") in seeking to recover from an insolvent shell." (**Ex. A**, pg. 20).

Dr. Papendick's indemnification claim against Tehum, if he has one, is worth little or nothing. Any meaningful recovery that Lyles achieves in this action will come not from Tehum, but from Dr. Papendick's personal assets.

CONCLUSION

For all the foregoing reasons, the automatic stay resulting from the Tehum Care Services bankruptcy does not apply to this action.

/s/Ian T. Cross
Ian T. Cross (P83367)
Attorney for Plaintiff
402 W. Liberty St.
Ann Arbor MI 48103
(734) 994-9590/ian@lawa2.com

14