# Exhibit 1:

**SECOND DECISION AND ORDER ON YESCARE'S
OMNIBUS MOTION TO ENJOIN PLAINTIFFS FROM
PROSECUTING CASES AGAINST RELEASED PARTIES**
*In Re Tehum Care Servs. Inc.,* No. 23-90086,
ECF No. 2521 (Bankr. S.D. Tex. Oct. 30, 2025)

Docket #2521  Date Filed: 10/30/2025
United States Bankruptcy Court
Southern District of Texas

**ENTERED**
October 30, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 23-90086 |
| TEHUM CARE SERVICES, INC., | § | |
| | § | |
| Debtor. | § | |
| | § | CHAPTER 11 |
| | § | |

**SECOND DECISION AND ORDER ON YESCARE'S
OMNIBUS MOTION TO ENJOIN PLAINTIFFS FROM
PROSECUTING CASES AGAINST RELEASED PARTIES**
(RE: ECF No. 2160)

CHS TX, Inc. d/b/a YesCare and certain of its affiliates are parties to consensual third-party releases approved under Tehum's confirmed Joint Chapter 11 Plan. YesCare filed a motion seeking to enjoin certain parties from litigating against YesCare and related parties based on the third-party releases.[1] In August 2025, the Court entered a *Decision and Order* partially granting and partially denying the motion, but also set another hearing about certain parties listed on an annexed "Exhibit C."[2]

After conducting the additional evidentiary hearing and considering the arguments of counsel, the Court partially grants and partially denies the motion as to the Exhibit C parties.

**BACKGROUND**

In March 2025, the Court entered an order confirming the Plan. The Plan incorporated a settlement agreement between Tehum, YesCare and certain of its affiliates ("**YesCare Parties**"), the Official Committee of Tort Claimants, and the Official Committee of Unsecured Creditors.

The settlement resolved, among other things, Tehum's estate causes of action against YesCare Parties about a Texas divisional merger and related acts.[3] In exchange, YesCare Parties agreed to pay $50 million. The funds were split evenly between a personal injury and/or wrongful death trust and a general unsecured claim trust.

---

[1] Motion to Enjoin Plaintiffs from Prosecuting Against Released Parties, ECF No. 2160. The final list of proposed enjoined parties was filed at ECF No. 2160-1.

[2] Decision and Order, ECF No. 2374.

[3] Disclosure Statement, ECF No. 1815-2, at 11–14.

2390086251030000000000001

The Plan also provided for consensual third-party releases between, among others, YesCare Parties and personal injury and/or wrongful death ("**PI/WD**") claimants.[4]

The Plan defines "Released Parties" as:

> (a) the Debtor; (b) Russell Perry, the Debtor's Chief Restructuring Officer; (c) the Committees and their respective members; (d) the Professionals; (e) the GUC Trustee; (f) the PI/WD Trustee; (g) the Settlement Parties; (h) M2 EquityCo LLC; (i) Valitás Intermediate Holdings Inc.; (j) Valitás Health Services, Inc.; (k) M2 Pharmacorr Equity Holdings LLC; (l) Pharmacorr/M2 LLC; (m) Pharmacorr Holdings LLC; (n) Endeavor Distribution LLC; (o) Yes Care Holdings LLC; (p) Sigma RM, LLC; (q) DG Realty Management LLC; (r) Scaracor LLC; (s) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (t) Sara Ann Tirschwell; (u) Ayodeji Olawale Ladele; (v) Beverly Michelle Rice; (w) Jeffrey Scott King; (x) Jennifer Lynne Finger; (y) Frank Jeffrey Sholey; (z) FTI Capital Advisors, LLC, and for each Entity listed in (a) through (z), each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors, Insiders, and Affiliates.[5]

In turn, the "Releasing Parties" are (a) the Debtor; (b) the Settlement Parties; and (c) Consenting Claimants.[6] "Consenting Claimants" consist of "a Consenting Indirect Claimant, a Consenting GUC Claimant, and/or a Consenting PI/WD Claimant." A "GUC Claim" means any Claim against the Debtor that is not a PI/WD Claim, an Administrative Claim, a Secured Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim. The term includes any general unsecured claim against Tehum regardless of whether such claim is alleged to have been allocated to CHS TX, Inc. or YesCare Corp. under the Plan of Divisional Merger.

The Court approved voting and solicitation procedures order ("**Solicitation Order**") required solicitation packages to be sent to eligible claimholders.[7] PI/WD claimants were classified in Classes 6–8 of the Plan and were entitled to receive a ballot and an Opt-Out Release Form.[8] An incarcerated claimant had to be provided hard copies of the solicitation package, which included a copy of the Plan, the

---

[4] Disclosure Statement, ECF No. 1815-2, at 15.
[5] Plan, ECF No. 1815-1, at 14.
[6] Plan, ECF No. 1815-1, at 14.
[7] Solicitation Order, ECF No. 1813, Exhibit 1: Solicitation Procedures, at 1.
[8] Solicitation Order, ECF No. 1813, Exhibit 1: Solicitation Procedures, at 7, 9.

Disclosure Statement, an Opt-Out Release Form, and a letter from the Tort Claimants' Committee (which, among other things, recommended claimants discuss the solicitation package with their lawyer).[9] Claimants who opted out of the third-party releases did not participate in the settlement and could pursue recovery against third parties—including YesCare Parties— in the tort system on theories of successor liability.[10]

Finally, some classes, like "Other Priority Claims" and "Other Secured Claims" were treated as unimpaired and did not receive a ballot. But these parties did receive an "Opt-Out Release Form."[11]

In connection with Plan confirmation, the solicitation agent filed a certificate of service of the solicitation materials ("**Solicitation Certificate of Service**").[12] The solicitation agent also filed a Declaration Regarding Solicitation and Tabulation of Votes ("**Voting Declaration**").[13] The Voting Declaration states that the solicitation agent posted certain solicitation materials, including the Plan and the Disclosure Statement on a public access website.[14] The Opt-Out Release Form was not posted or otherwise publicly accessible.[15] The Voting Declaration also states that publication notice was published in the Prison Legal News.[16]

### **YESCARE'S MOTION**

YesCare seeks an order enjoining certain parties from continuing to litigate in federal and state courts against YesCare Parties. YesCare originally identified over 100 parties in chart who allegedly did not submit an Opt-Out Release Form.[17] The chart identified parties by name, the case caption for the litigation, and the form of notice purportedly provided to each party.[18] YesCare asserts that each listed party received sufficient notice of the consensual third-party releases in the Plan,

---

[9] Solicitation Order, ECF No. 1813, at 6–7.
[10] Disclosure Statement, ECF No. 1815-2, at v–vi. Aside from successor liability, causes of action that were derivative of estate causes of action were settled and released by Tehum. The Solicitation Order also provided that holders of general unsecured claims would receive an Opt-Out Release Form. It does not appear that any of the parties identified in YesCare's motion fall into this category. But it would not change anything in this Order anyway.
[11] Solicitation Order, ECF No. 1813, Exhibit 1: Solicitation Procedures, at 7, 9.
[12] Certificate of Service of Solicitation Materials, ECF No. 1852. The solicitation agent also filed Supplemental Certificates of Service at ECF Nos. 1867, 1868, 1925, 1928, 1958, 1959, 1960, and 1988.
[13] Declaration Regarding the Solicitation and Tabulation of Votes, ECF No. 1993.
[14] Declaration Regarding the Solicitation and Tabulation of Votes ¶8, ECF No. 1993.
[15] *See* Declaration Regarding the Solicitation and Tabulation of Votes ¶8, ECF No. 1993.
[16] Declaration Regarding the Solicitation and Tabulation of Votes ¶9, ECF No. 1993; *see also* Order Approving Disclosure Statement, ECF No. 1813, Exhibit 4-2: Publication Notice.
[17] *See* Exhibit A, ECF No. 2360-1.
[18] Exhibit A, ECF No. 2360-1. YesCare's description of the form of notice purportedly provided to parties was very inaccurate.

3

and that the channeling injunction under the Plan bars them from prosecuting their respective lawsuits.

In August 2025, the Court entered a *Decision and Order* on the motion. The Court granted the motion as to parties listed on an annexed **Exhibit A** because those parties received an Opt-Out Release Form and did not opt out of the consensual releases. The Court denied the motion as to parties listed on an annexed **Exhibit B** because those parties were not served an Opt-Out Release Form. The Court did not rule on parties listed on an annexed **Exhibit C**. Exhibit C parties were served an Opt-Out Release Form and a Notice of Non-Voting Status instead of a ballot. The Court set a separate hearing for these parties to consider additional legal considerations and made no finding or ruling about these parties. A concern was that these parties were served packages provided to unimpaired creditors under the Plan, thus not subject to the trust procedures and settlement.

## RULING ON EXHIBIT C PARTIES

The Southern District of Texas Complex Case Procedures require a creditor to receive a notice that provides a box to check indicating assent or opposition to proposed consensual third-party releases in a chapter 11 plan.[19] The Solicitation Order followed the Complex Case Procedures and required parties asked for a consensual third-party release to receive a Court approved Opt-Out Release Form.[20]

The Court conducted an evidentiary hearing. The majority of Exhibit C claimants did not object to the YesCare motion when originally filed or in connection with the second hearing for Exhibit C claimants. The Solicitation Certificate of Service provided that these parties were served with an Opt-Out Release Form. There is no evidence of any of these parties objecting to their classification or treatment under the Plan. Thus, the Court finds the consensual third-party releases enforceable against these parties, which are listed on the annexed **Exhibit 1**. Now we turn to individuals who objected and assert they are not bound by the releases.

## Akinola

In March 2022, Rilwan Akinola filed a *pro se* complaint in the United States District Court for the District of Maryland. Akinola asserted claims against Corizon Health, Inc., a nurse, and a correctional officer. In February 2023, Corizon filed a Suggestion of Bankruptcy and the Maryland court stayed proceedings against Corizon.[21] In April 2024, the court appointed pro bono counsel for Akinola. In

---

[19] Procedures for Complex Cases in the Southern District of Texas, Section O, Plan Confirmation ¶40.

[20] Solicitation Order, ECF No. 1813.

[21] ECF No. 2160-1.

September 2024, Akinola filed a proposed amended complaint that dropped the claim against Corizon and asserted claims only against the nurse and the correctional officer. The amended complaint was later approved by the Maryland court. Thus, it appears Akinola is not asserting a claim against Tehum—or liability held by Tehum—based on the divisional merger. And there is no evidence in the record to the contrary.

The Solicitation Certificate of Service shows that Akinola was served with the Opt-Out Release Form on November 20, 2024 using a Baltimore City Correctional Center address.[22] Akinola argues, however, that he never received the Opt-Out. He submitted a sworn declaration stating that the address listed on the Solicitation Certificate of Service was outdated.[23] Akinola said that in March 2023 he was transferred from the Baltimore Center to the Dorsey Run Correctional Facility in Maryland.[24] Then, in November 2023, he was transferred to Roxbury Correctional Institution in Maryland.[25] And that he stayed in Roxbury until he was released on November 27, 2024.[26] Thus, Akinola argues that Tehum served him at an address where had not been for over 8 months. Akinola also said that his true address could have been determined, because he submitted filings in the underlying litigation reflecting an updated address.[27] And that his current location was readily ascertainable through the publicly available Inmate Locator on the website of Maryland's Department of Public Safety and Correctional Services. He also said he never received any forwarded mail with the Opt-Out Release Form.[28]

Akinola was suing Corizon based on liability that was perhaps held by Tehum due the divisional merger at the time Tehum filed its bankruptcy case (which he later dropped). Thus, he would have been a known creditor constitutionally entitled to actual notice—and not publication notice or other notice unrelated to Plan confirmation—before his litigation claims could be released under the Plan. *See, e.g.*, *In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–15 (1950) (concluding that Due Process requires actual notice for known creditors). Due Process required that he receive actual notice—i.e., the Opt-Out Release Form. And, again, the Solicitation Order required it too.

"Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner v. United States*, 285 U.S. 427,

---

[22] *See* Certificate of Service re: Solicitation Materials Served on November 20, 2024, ECF. No. 1852.
[23] Akinola Declaration, ECF No. 2472-1 (also 2285-1).
[24] Akinola Declaration, ECF No. 2472-1 (also 2285-1).
[25] Akinola Declaration, ECF No. 2472-1 (also 2285-1).
[26] Akinola Declaration, ECF No. 2472-1 (also 2285-1).
[27] *See* Akinola Declaration, ECF No. 2472-2.
[28] Akinola Declaration, ECF No. 2472-1 (also 2285-1).

430 (1932). Bankruptcy Rule 9006(e) also provides that "[s]ervice by mail of process, any other document, or notice is complete on mailing." This doesn't mean, however, that the serving party can just use any address. Due process requires notice that is reasonably calculated to apprise a party of the pendency of a matter and to afford that party the opportunity to present a response. *Matter of Faden,* 96 F.3d 792, 795–96 (5th Cir. 1996) (citing *Mullane,* 339 U.S. at 314). Thus, the address used must have been reasonably calculated to serve Akinola with the Opt-Out Release Form. Notice is not reasonably calculated when a party does not properly determine a creditor's address despite having adequate information readily available. *Matter of Faden,* 96 F.3d at 796.

Here, evidence shows that Akinola was served the Opt-Out Release Form at the Baltimore Center.[29] But YesCare doesn't establish that the address used was reasonably calculated to give Akinola notice. Akinola has rebutted any presumption that Tehum served him using the right address. He was not housed at the Baltimore Center during the Plan solicitation time. And there is no evidence in the record about Tehum's books and records or the soliciting parties' decision to solicit Akinola using the Baltimore Center address. Akinola also did not file a proof of claim or assert a claim against Tehum in this case using the Baltimore address. Nor did his counsel enter a notice of appearance requesting notice to the Baltimore Center.

No Tehum party involved in the solicitation process, including the solicitation agent testified at the evidentiary to support the relief request as to any party YesCare seeks to bind.[30] And that lack of evidence matters. As with prior hearings, the YesCare Parties (who were not the primary parties involved in the solicitation process) rely on certificates of service. And that is not enough to deem Akinola bound by third party releases based on service to the Baltimore address. And any argument that Akinola had some duty to keep Tehum apprised of his address in the bankruptcy case, rather than in the Maryland case is rejected.[31]

---

[29] ECF No. 1852

[30] YesCare Corp. attached an exhibit stating that "Mr. Akinola had actual knowledge of the bankruptcy proceeding because a Suggestion of Bankruptcy was filed in the underlying lawsuit on February 21, 2023. (Doc. 30)." But YesCare did not provide the address used to notify Akinola in the Suggestion of Bankruptcy and didn't provide a copy of the Suggestion of Bankruptcy.

[31] The Court also incorporates its reasoning in the Decision and Order at ECF No. 2374 and decision at ECF No. 2460 about arguments raised by YesCare parties about a duty to stay informed. YesCare's motion also says Akinola was an incarcerated claimant, which is undisputed. This means that he should have been classified as a PI/WD Claimant under the Plan, and he wasn't. Under the Plan holders of PI/WD claims are entitled to vote. Plan, ECF Nos. 1815-1, 1813. The Solicitation Procedures required that he be entitled to the Disclosure Statement, the Plan, and related materials (which included a letter from the Official Tort Claimants' Committee telling him to discuss the materials with his lawyer). Exhibit H, ECF No. 1852. Thus, even if Akinola was a claimant, he was still not properly served these materials and the Court would afford him the right, at a minimum

In addition, it is also not established why Akinola was even served with an Opt-Out Release Form when he was not suing Tehum or suing based on causes of action relating to debt or liabilities associated with Tehum. Again, there was no evidence presented from Tehum representatives or parties who solicited Plan materials. And there is no argument that Akinola is suing a party based on a claim held by the estate. YesCare's motion is about enforcing consensual releases between third parties. Also recall that "Consenting Claimants" are the parties who released YesCare under the consensual third-party releases in the Plan.[32] And a Consenting Claimant must either be a Consenting Indirect Claimant, a Consenting GUC Claimant, or a Consenting PI/WD Claimant.[33] The Plan definitions of each term requires a claimant to assert either a direct claim against Tehum or based on liability allocated to Tehum under the divisional merger, or an indirect claim against Tehum for defense, contribution, indemnification, or subrogation. Akinola is not seeking anything from Tehum, directly or indirectly. So he would not be subject to the Plan, including the consensual releases.

Thus, for all these reasons, Akinola is not bound by the consensual releases under the Plan.

### Hefley

Dustin Hefley was involved in prepetition litigation with Tehum and YesCare Parties in the United States District Court for the Eastern District of Missouri. Thus, due Process required that Hefley receive actual notice—i.e., the Opt-Out Release Form. And the Solicitation Order required it too.

The Solicitation Certificate of Service shows that Hefley was served with the Opt-Out Release Form using an address for Hefley's counsel at 103 E. Broadway St., Bolivar, Missouri 65613.[34] The problem is that's the address for his counsel's prior law firm, which he left in 2019. In 2022, Hefley's counsel appeared in the Missouri litigation and filed an updated address. Tehum, however, didn't serve Hefley directly or use his counsel's updated address. Thus, Hefley argues he should not be bound by the consensual third-party releases under the Plan.

YesCare says that the address used by the solicitation agent was the address listed in the case caption for the electronic court docket in the Missouri litigation. It appears that the court system did not update or reflect the address in Hefley's counsel's updated notice on the case caption. Regardless, based on the evidence, Hefley is not bound by the third-party releases.

---

under an excusable neglect standard, to submit an Opt-Out Release Form. And, again, he couldn't have objected to any Plan treatment because he was served at the wrong address.

[32] Plan, ECF No. 1815-1, at 4.

[33] Plan, ECF No. 1815-1, at 4.

[34] Exhibit H, Certificate of Service of Solicitation Materials, ECF No. 1852.

First, the Solicitation Order specifically required that incarcerated claimants be distributed a solicitation package containing a disclosure statement, the Plan, an Opt-Out Release Form and a pre-addressed return envelope.[35] Even if he held another type of claim, for which there is no evidence he did, Hefley was still supposed to receive a package under the Solicitation Procedures Order and he never did. His counsel never received a Plan solicitation package either. Instead, the solicitation agent only mailed a notice of non-voting status and the Opt-Out Release Form to his counsel.[36]

Second, there is evidence in the record that Hefley's counsel was served at the old address, so the presumption applies about service to that location. But there is no evidence in the record about whether that address satisfies due process here. Hefley has rebutted any presumption of good service. There was an updated address in the underlying litigation where Hefley's counsel may have been reached. Hefley's counsel also argues that the YesCare state court lawyers know his correct address and a phone call to them would have given them the right address. As with Akinola, this Court has no evidence about Tehum's books and records or the soliciting parties' decision to use the old address for Hefley's counsel, or why Hefley was not served directly either. And any argument that Hefley had some duty to keep Tehum apprised of his address in this case, rather than the Missouri case is rejected.[37] Hefley is not bound by the consensual releases under the Plan.

### Lyles

Andrew Lyles was involved in prepetition litigation in the United States District Court for the Eastern District of Michigan. Lyles originally sued multiple defendants, including a Corizon entity, based on alleged Eighth Amendment violations. But at the time Tehum started this bankruptcy case, the only defendant in the Lyles lawsuit was Dr. Keith Papendick.[38]

In March 2023, this Court entered an *Order Regarding Debtor's Emergency Motion to Extend and Enforce the Automatic Stay,*[39] which extended the automatic

---

[35] Solicitation Order, ECF No. 1813, at 6–7. The Solicitation Order requires Plan related materials be served on Holders of Claims and Incarcerated Claimants. "Holder" means any Person or Entity holding a Claim or an Interest. "Incarcerated Claimant" is the Holder of a PI/WD Claim who is known to be currently incarcerated in a federal, state, or local penal institution, prison, jail, reformatory, or other similar correctional institution. *Id.*, Exhibit 1: Solicitation Procedures, at 3–5.

[36] Exhibit H, Certificate of Service of Solicitation Materials, ECF No. 1852.

[37] The Court also incorporates its reasoning in the Decision and Order at ECF No. 2374 and decision at ECF No. 2460 about arguments raised by YesCare parties about a duty to stay informed. Hefley also never filed a proof of claim. Hefley's counsel never filed a notice of appearance in this case before YesCare filed its motion. So there is nothing in this case indicating Hefley wanted to be served at the counsel's old firm address.

[38] ECF No. 2310-3.

[39] Adv. 23-03049, ECF No. 118.

stay to, among others, the Lyles lawsuit. That same month, the Court entered a *Stipulation and Agreed Order Regarding Debtor's Motion to Extend and Enforce the Automatic Stay*.[40] Tehum agreed that the Lyles lawsuit should no longer be subject to the automatic stay. And the Court ordered that the Lyles lawsuit "may proceed against the sole defendant in that matter, Dr. Keith Papendick, a non-debtor individual."[41]

Even though Lyles was only suing a non-debtor, the Solicitation Certificate of Service shows that Lyles was served with the Opt-Out Release Form on November 20, 2024 using an address at the Cotton Correctional Facility in Jackson, Michigan. Lyles did not return the Opt-Out Release Form, so the YesCare Parties believe he is bound by the consensual third-party releases.

YesCare argues that Dr. Papendick falls within the definition of "Released Parties" because he is an "agent" of and "professional advisor" to Tehum, Lyles had notice and an opportunity to Opt-Out but failed to do so, Lyles failed to make an argument about the Plan's opt-out mechanism before Plan confirmation, and the Plan opt-out mechanism conforms with Fifth Circuit law.

Dr. Papendick's employer and its relationship with Tehum is disputed. Dr. Papendick was employed by Quality Correctional Care of Michigan, P.C. ("**QCCM**"). Lyles says this answers the questions because he is not an employee of Tehum. YesCare disagrees. YesCare says that Corizon contracted with the Michigan Department of Corrections ("**MDOC**") to provide healthcare to Michigan prisoners. Corizon then subcontracted with QCCM to provide medical services to the MDOC because Michigan law does not permit the corporate practice of medicine. Thus, YesCare believes Dr. Papendick was Tehum's "agent[]" and/or "professional advisor[]," for purposes of the definition of "Released Parties." YesCare, however, is wrong because it fails to consider the fundamental point that Lyles is not a creditor, and there is no evidence he is suing based on a derivative claim held by Tehum. YesCare's motion is about enforcing consensual releases of claims between non-debtor third parties. And Lyles is not a Consenting Claimant.

As noted above, only Consenting Claimants are subject to the consensual releases. And the Agreed Order between Tehum and Lyles stated that Dr. Papendick is a non-debtor individual. Lyles has not filed a proof of claim or asserted any form of claim against Tehum. So he is not a Consenting Indirect Claimant, a Consenting GUC Claimant, or a Consenting PI/WD Claimant. Lyles was not served a ballot to vote on the Plan. He was also not served a proof of claim either. But for some reason, he was served with a Notice of Non-Voting Status reserved for secured claim, "Other Priority Claims," administrative claims, or tax claims, which again

---

[40] ECF No. 237.
[41] ECF No. 237.

would only apply to a party with a claim against Tehum.[42] There is no evidence why Tehum served Lyles with any Plan related materials.

Bases on the record, Lyles is a non-debtor who is asserting a claim against another non-debtor and obtained an Agreed Order with Tehum confirming that Lyles could litigate against a non-debtor. And any argument that Lyles had some duty to keep Tehum apprised of his address here or stay vigilant for potential releases under a Plan after getting relief to sue Dr. Papendick directly is rejected.[43] He is not bound by the consensual third-party releases under the Plan.[44]

### Kelly

Keith Kelly was a plaintiff in a 2020 lawsuit in Maryland asserting claims under 42 U.S.C. § 1983 against the Commissioner of the State of Maryland Department of Corrections and certain employees of Roxbury Correctional Institution ("**2020 Lawsuit**"). Kelley was represented in that lawsuit by Bekman, Marder, Hopper, Malarkey, and Perlin LLC ("**Bekman Firm**").

In February 2023, Tehum started these bankruptcy cases. Tehum served the Beckman Firm with a proof of claim about the 2020 Lawsuit. Later in 2024, this lawsuit was terminated by stipulation between the parties.

In September 2023, Kelly started another lawsuit in Maryland *pro se* asserting claims under 42 U.S.C. § 1983 against certain individuals who worked at the Western Correctional Institution and were previously employed by Corizon ("**2023 Lawsuit**"). Tehum and Corizon were not named as defendants in the 2023 Lawsuit. Nor are there any claims asserted against them.

YesCare seeks to enjoin Kelly from proceeding in the 2023 Lawsuit against YesCare based on failure to opt out of the consensual releases. YesCare relies on the Solicitation Certificate of Service. It shows that Kelly was served with the Opt-Out Release Form and a Notice of Non-Voting Status using the Beckman Firm

---

[42] To the extent that Lyles would be considered a claimant based on the underlying litigation, he would have been improperly served. Under the Plan holders of PI/WD claims are entitled to vote. Plan, ECF No. 1815-1. The Solicitation Procedures require that he would be entitled to the Disclosure Statement, the Plan, and other related materials. ECF No. 1813. Lyles did not receive these materials. *See* Certificate of Service of Solicitation Materials, ECF No. 1852 (listing Lyles in Exhibit H and stating that the Exhibit H service list was sent "Opt-Out Release Form, Notice of Non-Voting Status, Confirmation Hearing Notice, and Return Envelope." Thus, if Lyles is considered a claimant, he was not properly served the required materials.

[43]The Court also incorporates its reasoning in the Decision and Order at ECF No. 2374 and decision at ECF No. 2460 about arguments raised by YesCare parties about a duty to stay informed.

[44] Because Lyles is not a Consenting Claimant, arguments about whether Dr. Papendick falls within the definition of Released Party are moot.

address.[45] Kelly was not personally served. In December 2024, the Beckman Firm sent a letter to Kelly with the Opt-Out Form stating the firm didn't represent him on this matter.[46]

In January 2025, Kelly submitted a letter to this Court (which was docketed on February 4, 2025) directing all future correspondence be sent to him directly.[47] He also stated that he did not fully understand the bankruptcy process. He also refers to the 2023 Lawsuit and says he is not going to opt out.[48] Later, in a June 2025 objection, Kelly says that he wanted to continue litigating the 2023 Lawsuit.[49]

Kelly started the 2023 Lawsuit *pro se*, so the Solicitation Order required Tehum to serve him directly with Plan related materials. But that did not happen. Instead, his counsel on the 2020 Lawsuit was served.[50] And that cannot serve as notice for the 2023 Lawsuit because the Bekman Firm didn't represent Kelly with respect to the 2023 Lawsuit. So he cannot be bound by the consensual third-party releases. Following the Solicitation Order trumps everything here.

It also appears that Kelly is a non-debtor who is asserting claims against non-debtors in the 2023 Lawsuit. He has not asserted a claim against Tehum, any liability assumed by Tehum in the divisional merger, nor is he otherwise seeking anything from Tehum. Kelly is not a creditor or a Consenting Claimant. Thus, Kelley's conflicting statements about his intent to opt-out are moot. Nor is there any evidence in the record about Tehum's books and records or the soliciting parties' decision to solicit Kelley through the firm representing in the 2020 Lawsuit. Finally, any argument that Kelly had some duty to keep Tehum apprised of his address or stay vigilant in this case rather than the 2023 Lawsuit, is rejected.[51] He is not bound by the consensual third-party releases under the Plan.

## **Young**

Ardra Young is a plaintiff in a prepetition lawsuit in Michigan against former employees of Tehum related entities based on alleged medical care he received during his incarceration at the Gus Harrison Facility in Adrian, Michigan in 2021.

---

[45] Exhibit H, Certificate of Service of Solicitation Materials, ECF No. 1852.

[46] ECF No. 1952.

[47] ECF No. 1952.

[48] The letter states "I, Keith Darnell Kelly, am a claimant [sic] is the above caption case and I do not want to opt-out. I have a "pending" civil case, case No.: BAH-23-2342, in the United States District Court for the District Court of Maryland, 101 Lombard Street, Baltimore, Maryland, 21201-2691; so, I'm not going to opt-out." The letter suggests that Kelly may have erroneously believed that by opting-out, he would be free to continue litigating his claims in the District Court.

[49] ECF No. 2284.

[50] ECF No. 1852.

[51]The Court incorporates its reasoning in the Decision and Order at ECF No. 2374 and decision at ECF No. 2460 about arguments raised by YesCare parties about a duty to stay informed.

Assuming any claims he asserts are against Tehum—or liability held by Tehum—based on the divisional merger, which is unclear from the record, he would be a known creditor.[52]

Young claims he never received the Opt-Out Release Form or any Plan related notices. Young submitted a letter purportedly signed by a mailroom supervisor confirming he did not receive any legal mail between March 2023 and January 2025.[53] The letter, however, asked the supervisor to confirm whether the legal mail came from Bowman and Brooke, which is counsel to the YesCare Parties, and not legal mail from the solicitation agent.

The Solicitation Certificate of Service shows that Young was served with the Opt-Out Release Form using:

> Gus Harrison Correctional Facility
> 2727 East Beecher Street
> Adrian, MI 49221[54]

But Young has filed several pleadings in this case, each using the following address:

> Richard A. Handlon Correctional Facility
> 1728 Bluewater Highway
> Ionia, MI 48846[55]

This Court has no evidence about Tehum's books and records, the soliciting parties' decision to solicit Young using the Harrison Facility, rather than the Handlon Facility. Regardless, Young has rebutted any presumption of good service. Instead, the evidence shows that he was served at the wrong address.[56]

YesCare's reply to Young's objection includes Young's original and amended complaints filed in 2021-2022. These complaints were filed when Young was housed at the Harrison Facility.[57] But YesCare also included the Suggestion of Bankruptcy filed by Tehum's counsel in the Michigan case about one week after the petition date. The case caption in the Suggestion of Bankruptcy lists Young's address at the Handlon Facility, not Harrison.[58] The Proof of Service on the last page also includes a certification that Young was served by mail at the Handlon Facility.[59] Thus, as of petition date, Tehum served Young at the Handlon Facility. Moreover, Young's

---

[52] This Court has not determined whether Young asserted a claim against Tehum for him to be subject to the Plan and potentially qualifies as a Releasing Party.
[53] ECF No. 2478.
[54] Exhibit H, Certificate of Service of Solicitation Materials, ECF No. 1852.
[55] *See* ECF Nos. 2255, 2256, 2464, 2478, 2479.
[56] ECF No. 1852.
[57] *See* Exhibit A & C, Original Complaint, ECF No. 2281.
[58] *See* Exhibit B, Suggestion of Bankruptcy, ECF No. 2281.
[59] *See* Exhibit B, Suggestion of Bankruptcy, ECF No. 2281.

objection to the motion shows that he asked for a prison log between March 2023 and January 2025 from the Handlon Facility, not the Harrison Facility.[60] Thus, all evidence shows that Young didn't receive the Opt-Out Form because he was not at the Harrison Facility as of the petition date to the present and Tehum's Michigan counsel knew or should have known it.

The Court also notes that if Young is an incarcerated claimant based on the Michigan litigation, he was improperly served. Under the Plan holders of PI/WD claims are entitled to vote. Plan, ECF Nos. 1815-1, 1813. The Solicitation Procedures require that he would be entitled to the Disclosure Statement, the Plan, and related materials. And that didn't happen here. Exhibit H, ECF No. 1852 shows that Young was sent the Opt-Out Release Form, Notice of Non-Voting Status, Confirmation Hearing Notice, and Return Envelope. Meaning that he was not sent the other required materials.

Thus, for all these reasons, Young is not bound by the consensual third-party releases under the Plan.

## Glenn

Deon Glenn is an incarcerated prisoner with the MDOC. In April 2022, he started a prepetition lawsuit against an MDOC employee and a Corizon employee in a state court action in the Eastern District of Michigan based on alleged violations of the Eighth Amendment. Glenn and his counsel say they never received any notices in connection with the bankruptcy case.

The Solicitation Certificate of Service shows that Glenn was served with the Opt-Out Release Form and a Notice of Non-Voting Status using the G. Robert Cotton Correctional Facility.[61] Glenn's counsel submitted an affidavit stating he nor Glenn ever received the Opt-Out Release Form. [62] The affidavit also states that "I am seeking the legal mail from the prison but have not received that log as yet."[63]

The Court will not make a determination yet. Glenn's counsel must certify in a sworn declaration by December 15 whether Glenn received any legal mail from Tehum or the solicitation agent (Verita) in connection with the Tehum bankruptcy case. YesCare parties will be afforded time to respond to any additional evidence submitted. There is a presumption that the solicitation agent mailed the Opt-Out Release Form to the G. Robert Cotton Correctional Facility. But this presumption may be overcome "by clear and convincing evidence that the mailing was not, in fact, accomplished." *In re OCA, Inc.,* 551 F.3d 359, 371 (5th Cir. 2008). Absence of

---

[60] ECF No. 2478.
[61] Exhibit H, Certificate of Service of Solicitation Materials, ECF No. 1852.
[62] ECF No. 2481.
[63] ECF No. 2481.

mail log entries may raise factual disputes over whether delivery occurred. *See Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 322 (3d Cir. 2014) (citing *United States v. Dawson*, 608 F.2d 1038, 1040 (5th Cir. 1979)) (noting that the absence of an entry in routinely kept mail logs may serve as evidence of non-receipt).

There Court also notes that if Glenn is an incarcerated claimant based on the Michigan litigation, he would have been improperly served. Under the Plan holders of PI/WD claims are entitled to vote. Plan, ECF Nos. 1815-1, 1813. The Solicitation Procedures require that he would be entitled to the Disclosure Statement, the Plan, and related materials. Exhibit H, ECF No. 1852. And that didn't happen here.

## **ORDER**

For the reasons stated above, the Court finds and Orders that:

1. The parties listed on **Exhibit 1** to this Order were served an Opt-Out Release Form and are bound by the consensual third-party releases in the Plan. These parties are restrained and enjoined from taking any action to prosecute any causes of action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party based on released Causes of Action (as such terms are defined in the Plan).

2. The parties listed on **Exhibit 2** are not bound by the consensual third-party releases in the Plan.

3. The Court will conduct another hearing on Deon Glenn at a later date.

4. The Court retains jurisdiction to interpret and enforce this Order.

Signed: October 29, 2025

_____

Christopher Lopez
United States Bankruptcy Judge

14

## **EXHIBIT 1**

| Claimant/Plaintiff | Case No. |
| --- | --- |
| Benjamin Beach | 22-cv-12105 (USDC E.D. Mich.) |
| Randy Clay | 17-cv-00646 (USDC D. N.J.) |
| Andre Dennison | 22-cv-15106 (9th Cir. Ct. of Appeals) |
| Dante Jeter | 21-cv-02828 (USDC D. Md.) |
| Maurice Jones | 22-cv-03079 (USDC W.D. Mo.) |
| Eilenn McNamara | 20-cv-04570 (USDC E.D. Pa.) |
| Todd Nachtweith | 21-cv-00371 (USDC E.D. Mo.) |
| Macking Nettles | 22-cv-00119 (USDC W.D. Mich.) |
| Michael Perkins | 21-cv-12720 (USDC E.D. M.) |
| Alfred Vela | 16-cv-51 (USDC N.D. Ind.) |
| Daniel Wichterman | 16-cv-05796 (USDC E.D. Pa.) |
| Andrew Wolf | 21-cv-00226 (USDC D. Idaho) |

**EXHIBIT 2**

| Claimant/Plaintiff | Case No. |
|---|---|
| Rilwan Akinola | 22-cv-00657 (USDC D. Md.)<br>D-121-cv-22-007131 (D.C. Md. Alleghany Cty.) |
| Dustin Hefley | 21-cv-00041 (USDC E.D. Mo.) |
| Keith Kelly | 23-cv-2432 (USDC D. Md.) |
| Andrew Lyles | 19-cv-10673 (USDC E.D. Mich.) |
| Ardra Young | 21-cv-12170 (USDC E.D. Mich.) |